15    481
203   ¹147

ALEXANDER YOUNG et al., Appellants, *v.* BERNARD DOWLING, Appellee.

### APPEAL FROM CARROLL.

A guardian's sale of real estate was not reported to and approved by the circuit court; an action of ejectment was brought against the purchaser at this sale, who had paid for the land and supposed his title perfect ; he sought relief in equity by enjoining the suit and praying to have his title confirmed :— *Held*, that equity could not relieve in such case.

Where a statute says that a title to land may be transferred in a particular way, it must be done in the way prescribed, or it receives no sanction from the statute, and is void.

If at the time of a guardian's sale the infant has but an equitable title, and subsequently acquires the legal title, equity will compel a conveyance to the pur-

chaser, of the subsequently acquired legal title, on the ground that the legal title was held as a trust.

ALEXANDER YOUNG and others commenced their action of ejectment against Dowling, to recover certain lots in the town of Galena, which Dowling had purchased at a guardian's sale some years before. Dowling filed this bill to enjoin this suit at law, and to have his title confirmed. The bill for an injunction charges that the only defect in the title of Dowling was the omission of the guardian to report his sale of the land to the circuit court, and have the proceedings there approved. The sale by the guardian was made in 1846; and that Dowling since the purchase had made permanent and valuable improvements on the land, believing his title perfect. A demurrer was interposed to the bill, which was overruled by the court, and the respondents standing by their demurrer, the Circuit Court of Carroll county, at April term, 1853, WILKINSON, Judge, presiding, perpetually enjoined the action of ejectment, and entered a decree confirming the title of Dowling, at the costs of the respondents. The respondents appealed.

HIGGINS and STROTHER, for appellants.

BLACKWELL and BECKWITH, for appellee.

CATON, J. In this case a very important principle is involved, which demanded and has received the most careful consideration of this court. The complainant in this case claims title to the premises in question under a guardian's sale made in 1846, under an order of the circuit court. The title in the case of Young *v.* Keogh, 11 Ill. 642, was precisely like this in every respect, being derived under a sale made by the same guardian, and under the same decree, and made at the same time with the sale under which the complainant claims title, so that that decision applies to this case precisely the same as if it had been made upon this identical title. The court there decided that all the proceedings were regular except that the guardian never made a report of his proceedings under the order of sale, as that order had directed and the statute required. For that defect this court decided that the sale was void, and that no legal title passed to the purchaser by the deed which the guardian had executed. This court then said: "There is no avoiding the conclusion that the title does not vest in the purchaser till the report is made and approved. The language of the statute is so explicit and unequivocal that it neither admits of doubt or

Young et al. *v.* Dowling.

argument." Since the decision of that case, a trial in ejectment has been had between the complainant and defendants in this bill, in which these defendants recovered a judgment in eject-ment against the complainant, thus determining in conformity to the decision of this court in the other case, that the com-plainant acquired no legal title by his purchase. This bill is filed against the heirs who were plaintiffs in the ejectment suit, praying an injunction to restrain the execution of the judgment rendered in that cause, and for general relief. The bill sets out the decree of the circuit court, ordering the guardian to sell, the fact of the sale to the complainant for the full value of the prop-erty, that he paid the purchase-money to the guardian, and took a deed from the guardian for the premises; and that, believing he had a perfect title to the premises, he took possession under his deed, and made valuable and lasting improvements on the premises of the value of $2,500; and that he was not aware of any defect in his title till the commencement of the eject-ment suit, which was after the death of the guardian, when it was impossible to compel a return of the sale to be made by the guardian, and to procure an approval thereof by the circuit court.

It is insisted, in support of this bill, that here was the creation of a power which, in itself, was perfect and complete, but which, through the mistake, accident, or inadvertence of the guardian, was defectively exercised or executed; and that it is competent for a court of equity to relieve against, and to give him a title, which by reason of such defect the law will not give him. Where a power is created by an individual, or the party interested in the exercise of the power, and that power is defectively executed by the agent appointed by the power to execute it, courts of equity may interfere and relieve against such defect, for the purpose of carrying out the purposes in-tended by the creator of the power, and the agent who imper-fectly executed it. But the general rule is otherwise where the power is created by law and without the concurrence of the party whose interests are to be affected by its exercise. Mr. Justice Story says: "But in cases of defective execution of powers we are carefully to distinguish between powers which are created by private parties and those which are specially created by statute; as, for instance, the powers of tenants in tail to make leases. The latter are construed with more strict-ness; and whatever formalities are required by the statute must be punctually complied with, otherwise the defect cannot be helped, or at least may not, perhaps, be helped in equity, for courts of equity cannot dispense with the regulations prescribed

by a statute; at least where they constitute the apparent policy
and object of the statute." 1 Story, Eq. § 96. Such, in our
judgment, is emphatically the case before us. Here the statute
has created a power to divest infants of their estate for certain
objects, specifying those objects, and prescribing the precise
mode of doing it, and stating clearly what acts shall be done
in order to pass the title. When the legislature created this
power, it foresaw the abuse and injustice to which it was liable,
and prescribed these forms for the very purpose of guarding
against such abuse, and this constitutes the manifest policy of
the law. Here the legislature prescribed a certain act to be
done, which is the final consummation of the exercise of the
power, and this last act, it has said, should pass the title; and
in construing that statute, we have determined, that without
that act the title did not pass. This act, from its very nature,
was one of the most important acts dictated by the law, to
guard against abuse, and to protect the interests of the infants
whose estate was to be taken from them without their consent.
This is the statute: " It shall be the duty of the guardian mak-
ing such sale, so soon as may be, to make return of such proceed-
ings to the court granting the order, which, if approved by the
court, shall be recorded, and shall vest in the purchaser or pur-
chasers all the interest the ward had in the estate so sold." If
there be any act prescribed by the statute which should be
deemed essential to a valid execution of the power conferred by
the law, it is this, which the statute says shall be the one which
shall vest the title in the purchaser; and it is this act, of all
others, which is best calculated to secure the interest of the
infant against the misconduct or indiscretion of the guardian,
for by it the court is required to revise and examine the acts of
the guardian in making the sale; and if not fair and just in
all respects, or if not in pursuance of the previous order of the
court, the sale will not be approved, in which event all the acts
of the guardian stand for nought. This was a wise provision
of the legislature, which says, in substance, that the sale shall
confer no right, and the guardian's deed shall convey no title,
and that all acts done *in pais* shall remain in abeyance, till the
court has examined and reviewed them, and entered its ap-
proval on its records. And yet this act, so manifestly forming a
most essential element in the policy of the statute, we are asked
to dispense with, because at this distance of time, and after the
decease of the guardian who made the sale, these heirs may
not be able to show any sufficient reason which, in the opinion
of a court of equity, would have required the circuit court to set
aside the sale made by the guardian. The law has not vested

the court of chancery with the jurisdiction to approve or disapprove of the acts of the guardian, but that jurisdiction was vested in the circuit court, which ordered the sale. If chancery may interfere and dispense with one of the requirements of the statute, it may with another, and thus in its unlimited discretion it may fritter away the whole statute. It is seriously claimed, that because the purchaser purchased in good faith, and paid the full value of the property to the guardian of the owners, that thereby an equity is raised in his favor and against them which the court will enforce. Equities do not arise upon statutory acts without the volition of those against whom the equity is charged. Suppose this guardian, seeing that a case existed which would require the circuit court to order a sale of the infant's estate, and in ignorance of the law, but in all honesty, had sold the estate for its full value, without an order of the court, to a purchaser who, in good faith, supposed he was getting a good title; in that case the purchaser's equity would be just as strong as is the equity in this case, and, should we now hold that the purchaser here acquired an equitable title which should be enforced against the heir, it would be equally our duty, when the case supposed arises, to compel a conveyance to the purchaser, and then the entire statute would be gone. But the truth is, the purchaser at these statutory sales gets no imperfect equitable title which may be perfected in chancery; he gets the whole title which the infant had, or he gets no title whatever. Undoubtedly, if at the time of the sale the infant had but an equitable title, and subsequently acquires the legal title, that equity will compel him to convey to the purchaser such subsequently acquired legal title, but that would be upon the ground that he acquired the legal title by reason of the equitable title which had been regularly sold, and that he took the legal title simply as trustee. In such a case equity could undoubtedly enforce the trust.

Nor has the complainant here the appearance of equity against the heirs which he supposes. The case does not show that the guardian appropriated the money which he received of the complainant to the support and education of the infants, or invested it in other estate for their benefit, or applied it in any way to their use. It simply shows that he received it as guardian. Had the money been invested in other lands for the infants, it may be that it could be followed there by the complainant; and even if it were shown that the money had been applied to their support and education, there would be some reason for saying that this should affect their consciences, and require them to refund it after they became of age; but that

question is not here, for it is not shown what the guardian did with the money. The complainant knew, or should have known, when he bought the land, that he got no title till the sale was reported to the court and approved, and that it was his place to see that the guardian performed his duty in this regard, as in any other which was essential to the validity of his title. Suppose the guardian had omitted to make the deed, could he now be allowed to say that he supposed the guardian had performed his duty and done it, and ask this court to dispense with that essential act? The complainant was in a position to compel the guardian to make a report to the court, and thus enable that tribunal to inspect his proceedings and see that the interests of the infants had not been sacrificed while they were perfectly powerless in his hands, and incapable of thinking or knowing or doing any thing affecting their interests. All the rights of parties thus situated are reserved, and they are to be considered as opposing and protesting against every thing which is done affecting their interests. This is a special proceeding provided by the statute, by which the title to land of third persons is divested without their consent, and not only against their will, but that, too, when they are incapable of making an effort to protect themselves; and such being the case, it was the duty of the legislature to throw every check and safeguard around the proceeding to protect the rights of the infants from becoming a prey to avarice and dishonesty. This was done by requiring the court to supervise the whole proceeding, and if all was found right and fair to approve them, until which time all the acts which had been done were merely preliminary, having in themselves no binding effect. It was the manifest policy of the law to make the court the special guardian of the infant, to see that he was not defrauded by his general guardian or others. This policy of the law must be upheld. The statute alone created the power to sell the land, and required that it should be exercised in a particular way to make it valid, and in no other way can it acquire validity. This sale and proceeding was either conformable to the law, or it was not. If the former, it conveyed a good title. If the latter, it was illegal, and nothing. The statute says the title might be transferred in a particular way, and if done in any other way the statute gives it no sanction, and it is as void as if there were no statute on the subject. This is not a power created by a power of attorney or by will, where the court may aid a defective execution of the power, where it is necessary to carry into effect the intention of the donor of the power, whose interests were to be affected by its execution.

We are not without authority directly on this point. The case of Bright *v.* Boyd, 1 Story, R. 478, is almost precisely like this in all its essential particulars. There an administrator had, in pursuance of a statute, been authorized by the probate court to sell land left by the deceased for the payment of debts. The statute required that previous to the sale the administrator should file a bond with the probate court, approved by that court. Previous to the sale a bond was executed, by sureties, and who were approved by the court, but the bond was not actually approved by the court and filed. The administrator advertised and sold the premises in pursuance of the order of the court, for their full value, and executed a deed, &c., and the purchasers had made valuable improvements thereon. The heir recovered the premises in ejectment, for the reason that no bond had been filed by the administrator, and approved by the court; and the bill was filed, praying that the heirs might be decreed to pay the value of the improvements or release to the purchaser. Story, J., after adverting to the decision at law, said : " It is now argued, that however correct this doctrine may be at law, yet in a court of equity the omission to give the bond within the stipulated time, ought not to be held a fatal defect, but it should be treated as an inadvertence, or accident, properly remediable in a court of equity. We do not think so. The mistake was a voluntary omission or neglect of duty, and in no just sense an accident. But if it were otherwise, it would be difficult, in the present case, to sustain the argument. This is not the case of the defective execution of a power created by the testator himself, but of a power created and regulated by statute. Now it is a well settled doctrine, that although courts of equity may relieve against the defective execution of a power created by a party, yet they cannot relieve against the defective execution of a power created by law, or dispense with any of the formalities required thereby for its due execution, for otherwise the whole policy of the legislative enactments might be overturned. There may, perhaps, be exceptions to this rule ; but if there be, the present case does not present any circumstances which ought to take it out of the general rule. Therefore, it seems to us, that the non-compliance with the statute prerequisites in the present case, is equally fatal in equity as it is in law." It would be difficult to find upon any question a case more directly in point, and if it be the law, of which we have no doubt, it settles the case conclusively.

The decree of the circuit court must be reversed, and the bill dismissed.

*Decree reversed.*

Scates, J., dissents.