# Edward K. Rogers

*v.*

# Milton O. Higgins *et al.*

1.  Equity—*married women's deed.*   By the revised statutes of Illinois, the law authorizing non-resident married women to convey their lands in this State, was repealed, and was not re-enacted until in February, 1847.   A non-resident married woman and her husband, after the repeal and before the re-enactment, executed a deed for the conveyance of the wife's real estate in Illinois: *Held*, that the deed was void as to the title of the wife.

2.  Same.   That in such a case, equity can not compel the wife to execute a valid deed, or restrain her or her grantees after she has become *discovert*, from enforcing her legal title to the premises.   That equity follows the law, but never abrogates or violates its provisions or policy.   And when the law has created disabilities, equity will not remove them.   To do so would be to violate, and not to follow, the law.

3.  Same.   Where the owner of real estate in Illinois, being a married woman and a non-resident, through the agents of herself and husband, contracted to

212 ROGERS *v.* HIGGINS *et al.* [Sept. T.,

Syllabus.    Opinion of the Court.

sell such land while the act of 1827 was in force authorizing non-resident married women to convey their property, but no deed having been made under the contract, before the law was repealed, she having no authority at the time her agents made the contract, to appoint attorneys in fact, her deed subsequently made when it was not authorized by law, is not aided by the contract which is itself inoperative.

4. ESTOPPEL. A married woman attempting to sell her real estate without authority, is not estopped afterwards to assert her title, because she received the value of the land as purchase money. Nor can a court of equity hold that a married woman who so acts without suppressing material facts, and has made no false representations to induce the purchase, is guilty of such a fraud as will estop her from asserting her title, notwithstanding her void deed. The law presumes that one dealing with a person under disability, and knowing the fact, intends to incur the consequences of his acts, and equity will not relieve him against them, or otherwise afford relief.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Messrs. SPAFFORD & McDAID, and Mr. W. C. GOUDY, for the appellant.

Messrs. HIGGINS, SWETT & QUIGG, and Mr. I. N. ARNOLD, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity, brought by Edward K. Rogers, in the Superior Court of Chicago, against appellees, to enjoin a suit in ejectment pending in that court, for the recovery of a part of a lot in the city. It appears that one Ann Wright, a married woman, purchased the property in question, in June, 1842, of William B. Ogden, and received a deed of conveyance in May, 1845. Mrs. Wright, and her husband, then residing in the State of New York, through their agents, Ogden and Jones, of Chicago, sold the premises in controversy

to Mrs.Elizabeth Rogers, the mother of complainant, for the sum of four hundred dollars, and executed to her a conveyance for the property on the 31st day of October, 1845. The deed was, however, held in *escrow* until the 10th of February, 1847. Mrs. Rogers took possession of the premises soon after the purchase. It seems that she paid the value of the property at the time of the purchase.

That Mrs. Wright remained married until early in the year 1860, at which time her husband died, leaving her surviving him as his widow. That on or about the 22d day of December, 1863, Mrs. Wright conveyed the premises to Milton O. Higgins, by a quit claim deed; and that Higgins purchased with full notice of the sale to Mrs. Rogers, and that she had paid in full for the lot. That after his purchase, Higgins had commenced a suit in ejectment against B. F. Crosby, who was at the time the tenant of complainant, to recover the property. The court below, on a hearing, dismissed the bill at the costs of complainant.

It is not disputed, nor can it be, that at the time this deed was executed and delivered, there was no statute of this State which authorized a married woman, holding real estate in Illinois, to execute a deed for its conveyance. There is no principle of the common law more firmly established, or uniformly recognized, than, a married woman is incapable of conveying her property by any of the usual deeds executed for the assurance of title to land. Nor can she make any binding contract, unless authorized by legislative enactment. Without such authority, a deed executed by her for the conveyance of her land, or any other contract, is void, and not merely voidable. These are rules familiar to all, nor are they controverted in this case, but appellant insists that there are equities in this case that entitle him to the relief which he asks. That there is hardship, no one will or can deny. He and his mother, for many years after having paid for it, have occupied the lot, and supposed it to be theirs, never suspecting their title to be

defective.   But is appellant, from the case he has made, entitled to the relief sought?

It is a fundamental rule in our jurisprudence, that equity follows, but never violates, the law, whether common or statutory.   Nor does it ever decree against its provisions or policy. From the earliest antiquity that we can trace the common law, we find that its policy has been to disarm the wife of all power to make any contract valid or binding.   It acted upon the principle, that to secure harmony and domestic quiet in the family, there must be a head, and, as far as possible, to avoid the introduction of separate and conflicting interests into its peaceful and quiet domain.   And it was supposed that the well-being of society could be best promoted, and the general good advanced, by not permitting the wife to sell or dispose of her separate property, whether real or personal.

As commerce advanced, art and science contributed their mighty influence to the march of progress; the fetters that clogged alienations have from time to time been removed, to answer the wants of the people; and by legislative enactment married women were enabled, with the concurrence of, and by joining with their husbands in a deed, to convey their real estate, and divest themselves of their title.   This is as far as our legislature has ever gone in this direction.   The revised statutes repealed all former laws on the subject of conveyance of real estate, and authorized married women in this State, by joining with their husbands, and acknowledging their deed in the mode specified, to alienate their lands, but no power was then conferred upon married women residing out of the State, in any mode to convey their lands lying in this State.   But, on the 22d of February, 1847, the general assembly restored the right to married women, beyond the limits of the State.   In the case of *Lane* v. *Soulard*, 15 Ill. 125, it was held that a deed executed by a married woman and her husband, during that period, between the repeal of the former law and the act of 1847, was made without authority, and against the law, and

was void. That the deed affected the rights of the married woman to the land in no way whatever, any more than if it had remained a blank piece of paper, or her name had been forged to it by some other person, instead of being written by herself. That she had no more legal right to put her name to the deed, so far as giving it effect, than a stranger had to write it for her. It was also said that the legislature was powerless to give it validity; that if they could give effect to a deed thus executed against the provisions of the law, they could at once make a deed which would convey the title; that if such an act could make the deed valid, it would be the law, and not the deed, which would pass the title; that it would be the act of the legislature, and not her act, which would pass the title. It was held that there was a total want of power, a total incapacity to act, and what was attempted to be done was in direct violation of the law; there was no defect to remedy—the act was void, not for the want of form, but for the want of power.

That was a case similar in its main features to the present, and was a bill in equity filed by the married woman to be relieved from the deed, and the relief was granted. Had it been inequitable and unjust to permit her to hold the property notwithstanding the deed, the court would not have afforded the relief, as equity never aids or assists parties in avoiding equitable obligations or contracts, although defectively or informally executed. That was a case of apparent hardship upon the grantee, but still the court decreed an injunction against the grantee, and prohibited him from asserting rights under the deed.

In the case of *Young* v. *Dowling*, 15 Ill. 481, which was a bill to enjoin an ejectment suit for lots in the City of Galena, it appeared that the property had been sold by the guardian, but he failed to report the sale to the court and have it approved. The bill prayed that the sale be confirmed, but it was held that a court of equity was powerless to afford relief.

The Court there said that there was a clear distinction between the defective execution of a power conferred by an individual and a power conferred by statute; that in the former class of cases, a court of equity would carry out the intention of the person who gave the power, and of the agent who defectively executed it, but that it was otherwise with the defective execution of statutory powers; that whatever formalities are required by a statute, must be complied with, otherwise the defect cannot, or at least will not perhaps, be helped by a court of equity, as that tribunal never dispenses with the regulations prescribed by statute, at least when they constitute the apparent policy of the statute.

In the case of *Moulton* v. *Hurd*, 20 Ill. 137, it was held, that a court of equity has no power to reform a mistake in the deed of a married woman; that to be binding, she must freely and voluntarily execute and acknowledge it in the mode prescribed by the statute; that the court cannot make a deed for her, or compel her to execute such an instrument. In the case of *Russell* v. *Rumsey*, 35 Ill. 362, it was said that equity has no jurisdiction to specifically execute a contract of a *feme covert*, whether for the relinquishment of her dower, or for the conveyance of her real estate. If there has been a mistake by the officer, or the *feme covert* has acted in bad faith, it is the misfortune of the grantee to have received a deed inoperative to pass the title; that he is presumed to know the law, and when he receives the deed it may be as readily inferred that it was with his assent as that the wife designed to perpetrate a fraud; and the Court refused to correct the acknowledgment. In that case, it was urged that a widow claiming dower, after having signed the deed and made a defective acknowledgment, acted in bad faith; that she knew at the time she executed the deed, the purchaser expected to receive a release of her dower, and that she must have intended to bar it by her act; but it was held that a married woman is unable to bar her right of dower, except by conforming

to the requirements of the statute. While these cases are not directly in point, they establish the rule, that a court of equity will not compel a married woman to execute a contract, or even correct a mistake made by her in conveying her real estate. Also, that where she has failed to comply with any statutory requirement, in the attempt to convey her property, equity will not interpose for the purpose of compelling her to supply the defect.

As a general rule, all persons deal with individuals laboring under disability, at their peril. The law has not favored such transactions, and it is not its policy to afford relief, or remove the disability for the benefit of those who have so dealt. And where there is a total want of legal power to make a contract, no rights can be acquired by an effort to execute an agreement although it may possess all the forms of a valid instrument. To enforce and give effect to such agreements in courts of equity, instead of following the law, would be to disregard and violate its provisions, and this is never done. A party dealing with a married woman, must be presumed to know the fact, and to contemplate the legal effect of the act, as he must be presumed to know the law. If this were not so, there could be no protection to idiots, minors or married women, so far as relates to their property. If equity would decree a specific performance of their agreements, or, having made them, restrain such persons from avoiding them, the policy of the law in creating disabilities would be overturned and all disabilities removed, and it would be simply to permit persons to acquire property in a mode prohibited by the law, and to transfer property which the parties themselves were unable to do, and the law has said they could not, and that such efforts would not be aided or enforced.

A party attempting to purchase from a person under legal disability, does that which he knows the law will not sanction, and we are at a loss to perceive how a person thus situated can appeal to the Chancellor to relieve him from the

28—48TH ILL.

218       ROGERS *v.* HIGGINS *et al.*       [Sept. T.,

Opinion of the Court.

consequences of an act he knew the person under disability could not perform, and which he knew the law had said should be wholly void. To grant relief in such a case, would violate the policy of the law ; would render all the safeguards thrown around the weak and incompetent ineffectual ; would invite a violation of the law ; would be contrary to the rules of equity, and although it might, in a few cases, promote justice, its general operation would be productive of great wrong and injustice. Parties knowing that the law confers no rights by such agreements, must be left to the consequences of their own rash or inconsiderate acts.

It is insisted that as Ogden and Jones, the agents of Mr. and Mrs. Wright, had contracted to sell this property to Mrs. Rogers, and had executed an obligation for its conveyance, before the repeal of the law authorizing non-resident married women to . sell their real estate in Illinois, Mrs. Rogers thereby acquired rights which could not be affected by the repeal of that law. If Mrs. Wright could have been compelled to execute that agreement, then, it may be that the proposition would be true. But we have seen that equity will never interpose to compel a married woman to specifically execute her void contracts. The statute then in force did not authorize a married woman to enter into an agreement to sell her land even in person, much less by agent. It only authorized her to convey her land by joining with her husband in a deed of conveyance. It is, however, urged that the 14th section of the chapter entitled " Conveyances," in the revised code of 1833, gave a broader and more comprehensive power to non-resident married women in conveying or disposing of their lands in this State, than is contained in the section authorizing resident *femes covert* to convey their lands. The language of that section seems to be broad and comprehensive, as it declares that if a married woman residing out of this State, and being over the age of eighteen years, shall join with her husband in any deed, mortgage, conveyance, or other

writing of, or relating to, any lands or real estate situated in this State, she shall thereby be barred of and from all claim of dower, and all other interest, claim, seizin, right and title therein, in like manner as if she were sole and of full age ; and the acknowledgment or proof of such deed, mortgage, conveyance, or other writing, may be the same as if she were sole. It cannot be held on any fair interpretation of this act, that the mere execution of a contract for a conveyance, would have the effect to bar the dower, or pass the title of a non-resident married woman, although the language is broad enough to produce such consequences ; but as such contracts have never produced such results, we cannot believe the general assembly intended to invest such contracts with these consequences. They must have only intended such results to attach to deeds or such instruments as purport to convey title or to convey dower. The section declares that she shall be barred of her dower or right in the same manner as if she were sole, and we know that a *feme sole* could only be barred of those rights by the execution of instruments purporting to have that effect. Hence, we conclude that mere agreements are not embraced in this provision.

It will also be observed, that the section does not confer the power on a married woman to execute a power of attorney for the conveyance of her lands; it does not authorize her to delegate the power that the statute conferred upon her; and this is the construction given to this section by the general assembly, when they came to re-enact it in 1847, as they then added a clause authorizing her to execute such instruments. In this case, the agreement, it is true, was executed by Ogden and Jones, the attorneys in fact of Mr. and Mrs. Wright, before the repeal of that section, and the deed was executed and delivered before its enactment. It is thus seen that in this view of the case, no rights were conferred upon the grantee except the life estate held by the husband in this property.

It is, again, urged that this case presents an equitable estoppel to the assertion of Higgins' title. This would, no doubt, be true, if the contract made by Mrs. Wright had been valid and binding, as Higgins purchased with full notice of appellant's title. But we have seen that it was not binding. It is urged that if this is true, still there is an estoppel, because the law imposes disabilities for the protection of those upon whom they are cast, and not to enable them to commit frauds upon others. Conceding this to be the reason of the law, it does not follow that a fraud has been committed, where the purchaser acts upon a full knowledge of all the facts, where nothing is concealed and no false representations are made to induce the purchase. In such a case, the purchaser must be presumed to act with a view to the results that the law declares shall flow from the purchase. In this case, Mrs. Rogers could not but have known that Mrs. Wright was a married woman, and attempting to sell her real estate, without authority of law. She is presumed to have known the law, and with this presumption, when she received the deed from which she learned, if not before, that Mrs. Wright was a married woman, the law will presume that she acted with a full knowledge of the facts in the case, and if so, no fraud was perpetrated upon her. She should have refused to receive the deed, or have indemnified herself for a failure in obtaining Mrs. Wright's title to the premises.

We do not propose to consider whether the changes in society require a change of the law placing married women under disability. We find that the common law, as it has descended to us, has, from the remotest period of its history to the present, recognized such disabilities, and our legislature has declared it to be the rule of decision until altered or repealed. If a further change is required, further disabilities removed, it must be left to the general assembly, where it belongs, to afford the relief. It is our province to administer the law as we find it, and not to repeal or modify well settled

principles. However forcible and able the arguments presented, to show that the policy of the law should be changed, they should be urged upon the legislative department, and not the judicial, for the change desired.

We perceive no error in this record, and the decree must therefore be affirmed.

*Decree affirmed.*