J. A. YOUNT v. FRANK MILLER.

*Presumption of Grant—Lapse of time and acquiescence of adverse
parties supply lost records in making up title—
Evidence—Dower.*

1. A party who relies on thirty years' adverse possession to presume a grant, is not bound to show that he and those under whom he claims held the possession and claimed the land up to visible boundaries, under the law as it existed when this action was brought.

2. The title to a widow's dower cannot be established by showing merely an entry on the docket and the report of a jury. But where the original papers in the proceeding for dower are proved to be lost, parol proof of their contents is admissible, in aid of her title; and the defects in the record are supplied by the presumption arising from the long possession (here thirty-six years) by the widow of the land described in the report, accompanied by the acquiescence of the heirs-at-law ; and every matter connected therewith that can be reasonably presumed, has the force and effect of proof.

3. A long acquiescence of adverse parties in the possession of land by another, will warrant the court in assuming the existence and loss of record-links in making up his title, the lapse of time varying with the conditions under which the records were kept and the casualties to which they were exposed.

EJECTMENT tried at Fall Term, 1884, of CATAWBA Superior Court, before *Gilmer, J.*

On the trial the plaintiff introduced one Little as a witness, and handed him the plat made by the surveyor, and asked him if he was acquainted with the land represented therein. He testified he was well acquainted with all the land, and had been for forty or fifty years; that when he first knew the land Frederick Hope was in possession, and after him, John Yount succeeded to the possession fifteen or twenty years before his death; and that John Yount held

land all around these lands, and Joshua A. Yount, the plaintiff, went into possession of a part thereof as the heir of John Yount; and that Lafayette Yount was an heir of John Yount and inherited the part claimed by defendant.

The plaintiff proved by M..O. Sherrill, former clerk of the court of pleas and quarter sessions, that the original papers in the case of Elizabeth Yount, widow of John Yount, for dower, against the heirs of John Yount, had been searched for by him, and were lost.

The plaintiff then, under objection by the defendant, offered in evidence the records of the minute docket of the court of pleas and quarter sessions, which were as follows:

"Original order, June, 1844: Elizabeth Yount, *Ex-parte*—Petition for dower—The clerk is appointed guardian *pendente lite* for the minor heirs of John Yount, deceased; acknowledges service of petition."

"December term, 1844: Elizabeth Yount against the heirs-at-law of John Yount—Petition for dower—Report filed and confirmed."

The report alleged to have been filed, and not disputed, was then produced, signed by twelve jurors, who allotted to the widow four hundred and fifty-four acres and a quarter of the land of John Yount, claimed to cover the *locus in quo.*

The preamble to the report was as follows: "We, the undersigned jurors attended at the house of Elizabeth Yount, widow, on the 26th day of August, 1844, and being legally qualified, proceeded to lay off and allot to Elizabeth Yount, widow, her dower and third interest in the lands of John Yount, deceased, her husband."

The plaintiff proved by the witness Little, that the widow Elizabeth was in possession of the land embraced in this report of dower, for thirty-six or thirty-seven years, and died in May, 1879.

He also offered in evidence the proceedings had in the

superior court of Catawba, in a petition filed by P. L. Yount and others, including the plaintiff who were heirs-at-law of John Yount, against J. H. A. Yount, who was also one of the children and heirs of John Yount, for a partition of the land on which Elizabeth Yount lived. There was no objection to the introduction of this evidence.

Plaintiff also offered in evidence a deed from M. M. Smith and wife, to the plaintiff, Joshua A., dated 11th September, 1881, which covered and embraced the portion or share allotted to M. M. Smith and wife in said partition. It was also in evidence that Mrs. M. M. Smith was a daughter of John Yount, deceased.

Plaintiff then introduced as a witness Lafayette Yount, who testified that he was a son of John Yount, and that he had been in possession of the land claimed by defendant for twenty-six or twenty-seven years, and that the defendant succeeded him in the possession.

In order to estop the defendant from denying John Yount's title, the plaintiff offered a deed from Lafayette Yount to the defendant, dated 8th September, 1869, which said deed the defendant claimed covered the *locus in quo.*

1st Exception. The defendant asked the court to charge that unless the plaintiff and those under whom he claimed have had the land sued for, twenty-eight or thirty years, under known and visible lines and boundaries, the plaintiff could not recover. This was refused—the court holding that thirty years' actual adverse possession raised a presumption of a grant, whether there were visible boundaries or not. To this the defendant excepted.

2nd Exception. The defendant also asked the court to charge that as plaintiff had not shown that Lafayette held the land as heir-at-law of John Yount, no question of estoppel arises in this case. The court declined to give the instruction, and left it to the jury to say whether the plain-

tiff had proved that Lafayette had inherited from John Yount the land in controversy. Defendant excepted.

3rd Exception. The defendant also asked the court to charge the jury that as the proceedings for partition of land which the plaintiff claims, (the land in dispute) show that the plaintiff claims as heir-at-law of Elizabeth Yount, the widow, the defendant's adverse possession had ripened into a perfect title before the death of Elizabeth Yount. The court declined to give the charge and defendant excepted.

The defendant disclaimed title to all the land sued for, except the *locus in quo*, and contended that he had been in the actual adverse possession of a tract of land covering the *locus in quo* with color of title for twelve years, and the plaintiff was thereby barred of a recovery.

There was a verdict for the plaintiff, and judgment accordingly, from which the defendant appealed.

*Messrs. D. Schenck, Reade, Busbee & Busbee,* and *J. M. McCorkle,* for plaintiff.

No counsel for defendant.

Ashe, J. The facts of this case are very vaguely and obscurely presented. And some of the important facts of the case, we have the opinion, were proved or admitted because no question was raised about them in the record. For instance, we must take it for granted that the land allotted to the widow for dower and the lot assigned to Smith and wife in the partition covered the *locus in quo*, and also that the deed made by Lafayette Yount to the defendant covered the same land, and that the defendant was in possession when the action was brought.

Beginning with these assumptions, which we think warranted by the record, we proceed to the consideration of the points of law presented.

The first instruction asked by the defendant was prop-

erly refused by the court. There was no error in the charge. As the law stood at the time of the trial of this case, and as applicable to it, a party, who relied on thirty years' adverse possession to presume a grant, was not bound to show that he and those under whom he claimed had held the possession, claiming up to visible lines and boundaries. But even if that were so, it could not apply to this case; for here, it was proved that the land in controversy had been in the adverse possession of John Yount for fifteen years before his death, and in the possession of his widow for thirty-six or seven years after his death, claiming up to the lines defined in the allotment of dower, and then that John Yount had owned the lands all around there.

As to the second instruction asked, it was immaterial under the facts of the case, whether Lafayette Yount claimed the land conveyed by him to the defendant, by inheritance from John Yount, for as the land had been held by the widow and John Yount sufficiently long to presume a grant from the state, the inquiry whether the defendant was estopped to deny the title of John Yount became unimportant. But if not so, the question was very properly left to the jury, who had before them the testimony of the witness Little, who testified that Lafayette Yount was an heir of John Yount, and that he had inherited the part of the land claimed by defendant.

The third instruction asked was rather " begging the question." The court was asked to charge the jury that as the proceedings for partition show that the plaintiff claims the land in controversy as heir of Elizabeth Yount, the defendant's adverse possession had ripened into a perfect title before the death of Elizabeth. But the plaintiff in those proceedings did not claim the land as heir of Elizabeth Yount. The plaintiff and the other petitioners applied as tenants in common to have partition of the land, not that belonging to Elizabeth but that on which she lived. What

land was that? Why the land that had belonged to John Yount, and after his death allotted by a jury of twelve men to the widow of John Yount for her dower. The bare statement of these facts is sufficient to force any sensible mind to the conclusion that they were claiming the land as cotenants by inheritance from John Yount.

This brings us to the only important question presented by the record. The plaintiff insists that as the widow had dower assigned her in the land in controversy, his cause of action did not accrue until after her death in 1879, and the defendant contends that the evidence offered by the plaintiff to establish the dower of the widow was insufficient for that purpose, and that his adverse possession for more than seven years with color of title barred the recovery of the plaintiff.

These opposite and conflicting contentions of the parties narrows the case down to the question, whether the evidence offered by the plaintiff was sufficient to establish the fact that dower had been allotted to the widow, as contended by the plaintiff.

The entry on the docket and the report of the jury, standing alone, we do not think sufficient to establish the title of the widow to her dower, for there is no petition shown, no evidence of a writ issued to the sheriff commanding him to summon the jury, and no judgment confirming the report of the jury. But as the papers in the case, after search, are proved to have been lost, we think parol proof is admissible as secondary evidence in aid of the widow's title, and the defects in the record are supplied by the presumption arising from the long possession by the widow of the land described in the report, accompanied by the acquiescence of all the heirs-at-law of John Yount.

In *Richards* v. *Elwell*, 12 Wright., 361, a case of parol bargain and sale of land and possession for forty years, the court used the following language: " There is a time when

the rule of evidence must be relaxed ; and if not to be relaxed after forty years, when is it to be ?"

Mr. WHARTON, in his work on Evidence, § 1354, after treating on the subject that when a record is complete the burden of proof is on the party by whom it is assailed, proceeds to say : " We have now to advance a step further, and to consider those titles in which after a long possession it is discovered in making up the title that one of its record-links cannot be found.  Is it not likely that such link once existed but it is now lost?  The answer to this question depends upon the degree of care with which records at the time under consideration were kept, and the casualties to which they were exposed ; and in determining the question of the evidence of such link, and its subsequent loss, a very important point for consideration is the long acquiescence of adverse parties—an acquiescence not probable if the title was bad.  Hence it is that the courts have assumed the existence and loss of such links after a lapse of time, varying with the conditions under which the records were placed."

The record here was a record of the court of pleas and quarter sessions, which court was abolished in 1868, and its records transferred to the superior court, where, as records of the past, it was not to be expected they would receive such care in their preservation as the records of the court in which the custodian was the clerk.  And it is a well known fact of judicial history that the records of nearly all our courts suffered greatly from neglect during the war, and were besides exposed to the casualties and accidents of that disturbance.

Mr. WHARTON, in support of the principle laid down by him as above, cited numerous cases—notably among them are the cases of *Battles* v. *Holly*, 6 Greenleaf Rep., 145, and *Freeman* v. *Thayer*, 33 Maine, 76.

In the former case it was held that after the lapse of

22

thirty years the authority and qualification of an administrator were presumed from the existence of an inventory, a schedule of claims filed by him on oath, a petition preferred by him to sell the real estate of the deceased, with the certificate of the judge thereon recognizing him as administrator, the probate records and files of that period appearing to have been loosely kept, and no other vestige of his appointment having been discovered. And in the latter case, HOWARD, J., speaking for the court, said : "It has been determined that after the lapse of thirty years from a collector's sale of land for taxes, it may be presumed from facts and circumstances proved, that the tax bills, valuation, warrants, notices, &c., were regular; that the assessors and collectors were duly chosen at legal meetings; that the collector was sworn ; that a valuation and copy of the assessment were returned by the assessors to the town clerk, and that *every thing which can be thus reasonably and fairly presumed, may have the force and effect of proof,*" and for the position he cited a number of English and American decisions.

Upon consideration of the authorities cited bearing upon the facts of this case, we are led to the conclusion that there was no error and the judgment of the superior court is therefore affirmed.

No error.                                    Affirmed.