SAMUEL MOBLEY v. PAUL WATTS.

*Appeal—Evidence—Lost Records—Nonsuit.*

1. Parol evidence is admissible to prove the contents of lost or destroyed records. The statutory method of restoring such records, *The Code,* §55 *et seq.*, does not have the effect to exclude such proof.

2. Whenever, in the progress of a trial, the plaintiff offers evidence to prove facts necessary to establish his case, and it is excluded by the Court, he may voluntarily submit to a nonsuit and appeal, and have the ruling reviewed.

(*Foster* v. *Woodfin*, 65 N. C., 29; *State* v. *McAlpin*, 4 Ired., 140; *Wade* v. *Odeneal*, 3 Dev., 423; *Drake* v. *Merrill*, 2 Jones, 368; *Sutton* v. *Westcott*, 3 Jones, 283; *Barwick* v. *Wood*, Ibid., 306; *Spencer* v. *Cohoon*, 1 D. & B., 27, and 4 Dev., 226, and *Hedrick* v. *Pratt*, 94 N. C., 101, distinguished and approved. *Dail* v. *Sugg*, 85 N. C., 104; *Yount* v. *Miller*, 91 N. C., 336; *Stewart* v. *Fitzgerald*, 2 Murph., 255; *Nelson* v. *Whitfield*, 82 N. C., 46; *Graham* v. *Tate*, 77 N. C., 120, approved, and *Hargett* v. _____, 2 Hay., 76 (243), overruled).

This is a CIVIL ACTION to recover damages for trespass on land, and was tried before *Merrimon, Judge,* at Spring Term, 1887, of MARTIN Superior Court.

It was admitted that the *locus in quo* was owned in fee by Otis Andrews at the time of his death, and descended to his children.

The plaintiff claims title through a partition among the heirs-at-law of said Andrews, and successive conveyances to himself of a share allotted to one of said heirs, and put in evidence a deed from said heir to John L. Mobley, and a deed from said John L. to himself.

This deed, after a general description of the lands conveyed, referred for a more definite description to the report of the commissioners making the division between the heirs of said Andrews.

The plaintiff then offered, and was permitted by the Court to prove, the destruction of all the Court records of the county

of Martin, by the burning of the court house in December, 1884, and further offered to prove by parol that a petition for the partition of the lands of Otis Andrews was filed by his heirs-at-law at January Term, 1858, of the County Court of Martin, and that a decree for partition was made in said cause, and partition duly made in accordance therewith, and reported and confirmed by the Court, and that the same was recorded in a book containing the records of the land divisions of the county, and which book was in the office of the Clerk of the Superior Court, and was, with the papers, proceedings and orders in said action, destroyed by the burning of the court house; and further to show the contents of said proceeding by parol.

To this offer of parol proof the defendant objected, upon the ground that said records could not be proved in this oction by parol, but must be set up under the statute for the restoration of burnt and lost records, or other proper proceeding.   Objection sustained by the Court, and plaintiff excepted.

The plaintiff then offered in evidence the deed from one of the heirs of Otis Andrews to the defendant, describing the land conveyed therein as the tract which the grantor drew in the division of the Otis Andrews' tract of land, numbered in said division as No. ..., which will fully appear by reference to said division now on the records of Martin County, and then offered to show the destruction of said records by the burning of the court house, and to show by parol the contents of said records, and to show the boundaries and contents of said records by parol.   Objection by defendant.   Objection sustained and plaintiff excepted.

The plaintiff submitted to a nonsuit and appealed to the Supreme Court.

*Mr. J. E. Moore* filed a brief for the plaintiff.

*Messrs. J. B. Batchelor* and *Jno. Devereux, Jr.*, for the defendant.

DAVIS, J., (after stating the case). The record having once existed, and having been destroyed by fire, the question presented is, can secondary evidence be admitted to prove facts of which the lost or destroyed record furnished the primary and best evidence?

The defendant insists that it cannot, and that the loss can only be supplied and the evidence made available by the mode prescribed in *The Code*, §55 *et seq.*, for the restoration of "*burnt* and *lost records*," and for this numerous authorities are cited, which we have examined with care, and the more so because of the confidence and earnestness with which the very able counsel who represented the defendant relied on the correctness of the position.

*Foster* v. *Woodfin*, 65 N. C., 29, relied on, was a motion to amend the record, and it was said that "whenever by any accident there has been an omission by the proper officer to record any proceeding of a Court of record, the Court has the power, and it is its duty, on the application of any person interested, to have such proceeding recorded as of its proper date."

This is only the assertion of the power inherent in every Court of record to make its records speak the truth, and has no reference to *lost* records, and the same may be said of the *State* v. *McAlpin*, 4 Ired., 140, cited. The cases of *Wade* v. *Odeneal*, 3 Dev., 423; *Drake* v. *Merrill*, 2 Jones, 368; *Sutton* v. *Westcott*, 3 Jones, 283; *Borwick* v. *Wood*, *Ibid.*, 306, and *Spencer* v. *Cohoon*, 1 D. &. B., 27, and 4 Dev., 226, were none of them cases of lost record, but only refer to parol evidence offered to explain or prove existing records. *Glass* v. *Stinson*, 2 Sumner, 605, cited also in Myers' Fed. Dec., §914, vol. 17, was a case in which it was sought to establish by depositions the fact that there had been an indictment, trial, conviction and sentence, "which," said Judge Story, who delivered the opinion, "should be proved by a production of the record itself." The record in that case was not lost, and, as was

said by the Judge, "the best evidence was the original or a certified copy."

*Gridley* v. *Phillips*, 5 Kansas, 349, simply declared that under a sale made by an administrator under judicial proceedings in which the administrator was ordered to execute a deed to the purchaser, a deed made by the agent of the administrator was not valid. The record *existed*, but it did not give validity to a deed not executed in accordance with its directions, but by one not authorized by law to make it.

Freeman on Void Judicial Sales, 88 and 89, relied upon by the defendant, only goes to the extent of declaring that an essential statutory requisite in a judicial sale cannot be dispensed with even in a Court of Equity.

In Illinois certain heirs recovered judgment in ejectment for land purchased at a guardian's sale. There was no report made by the guardian of his proceedings under the order of sale, and, of course, no confirmation.

The purchaser filed a bill to enjoin the execution of the judgment and for general relief. This was denied in *Young* v. *Dowling*, 15 Ill., 481, cited by Freeman.

It was put upon the ground, pure and simple, that the requirement of the statute had not been complied with, and that "the purchaser at these statutory sales gets no imperfect equitable title which may be perfected in chancery; he gets the whole title which the infant had, or he gets no title whatever." There was and had been no record.

In *Weatherhead* v. *Baskerville*, 11 Howard, 360, cited in defendant's brief, also in 17 Myers' Federal Decisions, §916, it is said: "The burning of an office and of its records is no proof that a particular record had ever existed. It only lays the foundation for the inferior evidence."

Instead of sustaining the position of the defendant it clearly admits the contrary view, that the record having once existed and been lost, secondary evidence is permitted to supply the loss, and we find abundant authority for this

latter position. We have seen no decision to the contrary. The nearest approach to it is a short opinion of Judge Moore in *Hargett and wife* v. _____, reported in 2 Haywood, 76, (243 of Martin and 2 Haywood Law and Equity, by Judge Battle,) to which our attention has been called by Justice Merrimon, and which is as follows: "The contents of a record, lost or destroyed, cannot be proved otherwise than by a copy. It is better to suffer private mischief than a public inconvenience, especially one of such magnitude as the introducing of parol testimony to supply a record."

The eminent Judge does not exclude *all* secondary evidence, but limits it to copies. He cites no authority, and the ruling is questioned by the Reporter, Judge Haywood, himself a jurist of great learning and ability, in a full note, in which he says, "all former decisions are at variance with this decision," and in which he shows, by forceful reasoning and high authority, that the contents of a lost record may be proved by parol, when better evidence cannot be had. He cites a number of authorities, among them Lord Mansfield, who, in Cowper, 109, says: "If a foundation can be laid that a record or deed existed and was afterwards lost, it may be supplied by the next best evidence to be had."

In the note referred to it is said: "Parol testimony may misrepresent facts, and so may deeds and records; but as because in the latter there is a greater probability of truth than in parol testimony, and for that reason the law requires them, so because there is no record nor deed, nor any copy, parol evidence will in general relate the fact truly, and is as much better than no evidence at all, as records and deeds are superior to itself, it ought to be received upon the same principle as they are, not because there is absolute certainty either in the one or the other (for a record or deed may be altered or corrupted, substituted or the like,) but because in choosing probabilities, it is wise to take the best that offers. To require the production of a record or deed when there is

undoubted proof of its destruction, is to require an impossibility, and *lex nemenim cogit ad impossibilia;* to say his right shall be lost with the record or deed that forms it, though destroyed by invincible calamity, is to inflict punishment for the acts of heaven and *actus dei nemini facit injuria,*" &c.,   *   *   *   "all other rights not required to be evidenced by records or deeds, are at all times capable of proof by some circumstance or other, sufficient to evince their existence." And why should rights which, because of their superior value and importance are required to be evidenced by deed or record, be irretrievably lost by the loss or destruction of the higher evidence upon which they vest, and which higher evidence, we know from experience, may be frequently lost or destroyed?

We think the admissibility of secondary evidence to supply the loss is sustained both by reason and authority.

If the *record is lost* and is ancient, its existence and contents may sometimes be presumed, but whether it be ancient or recent, after proof of the loss, its contents may be proved, like any other document, by any secondary evidence, where the case does not, from its nature, disclose the existence of other and better evidence." 1 Greenleaf, §509, and the cases referred to in the note. See also Wharton on Evidence, §135; *Clark* v. *Tindle,* 52 Pa. St., 492; *Gore* v. *Elwell,* 22 Maine, 442; *Nason* v. *Jordan,* 62 Maine, 480; *Kershaw* v. *Kershaw,* 36 Maryland, 309; *Dail* v. *Sugg,* 85 N. C., 104; *Yount* v. *Miller,* 91 N. C., 336; *Stuart* v. *Fitzgerald,* 2 Murph., 255; *Nelson* v. *Whitfield,* 82 N. C., 46.

These and the cases cited in them clearly show that secondary evidence is admissible in case like that before us.

But it is insisted that the statutory mode of restoring lost or burnt records excludes any other mode of proof. We think not. It was not a repeal of the common law rules of evidence, but in aid of them, so as to enable those "whose evidences of title to real property had been destroyed, in-

stead of relying upon the slippery memory of witnesses, whose testimony may be lost in a few years in the course of nature, to have the means of perpetuating the muniments of their titles." *Cowles* v. *Hardin*, 91 N. C., 231, and the cases there cited.

The counsel for the defendant says that if this Court shall be of opinion that there was error in the ruling of his Honor below, still the plaintiff is not entitled to a new trial, because the appeal is not properly in this Court, and he moves to dismiss it upon the ground that the judgment of nonsuit was at the instance of the plaintiff—was the judgment asked for by him—and that he could not appeal unless and until after all the evidence was in, and there was an intimation of the Court that, upon the *whole* evidence he was not entitled to recover, and upon the further ground that the appeal was premature and fragmentary.

For the first ground he relies upon *Hedrick* v. *Pratt*, 94 N. C., 101. In that case there was a verdict for the plaintiff, and "the Court, upon consideration of all the law bearing upon the case, being of opinion with the defendant, directs the verdict to be stricken out," the necessary effect of which was a new trial. As was said by the Court, "for some singular reason that does not appear, the plaintiff took a nonsuit and appealed." He could not assign ground of error to be reviewed and corrected by this Court, for as to the judgment of nonsuit demanded and obtained by him, the Court had made no adverse decision, it had allowed him just what he asked for. He could not be allowed the absurd thing of asking this Court to correct alleged error in a judgment in his own favor, granted at his instance, and in no sense at that of the defendant, nor at the suggestion, or under any adverse ruling as to it. "If the plaintiff could have appealed, as he undertook to do, this Court could not do more than grant a new trial. Why, therefore, did he desire to

appeal?"   That is unlike the case before us, which comes within the well settled rule laid down in that very case, "that when on the trial the Court intimates an opinion that the plaintiff cannot maintain the action, he may, in deference to the opinion of the Court, submit to a judgment of nonsuit, assign ground of error, and appeal to this Court. In such cases the judgment is not regarded as entered simply at the instance of the plaintiff, he submits to it with the understanding on the part of the' Court that he shall have the right to except and appeal." In *Graham* v. *Tate,* 77 N. C., 120, PEARSON, C. J., says: "Even when the plaintiff appears at the trial, takes a part in it by challenging jurors, examining and cross-examining witnesses, and the argument of his counsel, if he finds from an intimation of the Court that the charge will be against him, he may submit to a nonsuit and appeal. *This is every day practice.*" And the Chief Justice gives the reasons for it.   But, says the learned counsel, there was in this case no intimation that the charge of the Court would be against the plaintiff, and there could be no such intimation until the whole case was before the Court.   We cannot take this narrow view of the case; it is "sticking in the bark."' In the progress of the trial the plaintiff offers evidence to establish necessary links in his chain of title, without which he cannot make out his case. This evidence is excluded.   Can he go any further?   He submits to a nonsuit.   Is not the irresistible inference that he does so because, not under the intimation simply, but under the ruling of the Court, if correct, he must fail?

It presents a case in which he has the right to have his Honor's opinion reviewed by appeal, or it is the end of his case.   It is not an appeal from a mere interlocutory ruling or judgment, which brings up only a " fragment" of the case. It goes to the merits and existence of the case, and upon

neither ground relied on can the motion to dismiss be allowed.

There is error and a new trial is awarded.

Error.                                    *Venire de novo.*

---

NOTE.—The same point was presented and determined in like manner in *Robertson* v. *Council,* from Martin county, at the present Term.— REPORTER.