## KOONS v. BRYSON et al.

(Circuit Court of Appeals, Fourth Circuit. May 28, 1895.)

No. 117.

1. PRACTICE—NONSUIT AT SUGGESTION OF COURT.

A judgment of nonsuit, taken in deference to the opinion of the court upon a question of law which disposes of the case, is subject to review on writ of error.

2. EVIDENCE—BOUNDARIES.

In an action of ejectment declarations of a chain carrier as to the location of certain lines in the survey in which he took part, which lines, without regard to the location of others, necessarily include the land in controversy, are sufficient to require the submission of the question of boundary to the jury.

3. SAME—POSSESSION OF LAND.

In an action of ejectment, evidence of a declaration of one of the defendants, made on the premises, that they had dug a mining shaft and cut timber to build a fence and cabin on the premises, to establish their possession, with evidence that the fence and cabin remained on the land and had been kept up by the defendants, who had also employed an agent to sell the land, is sufficient to require the submission of the question of possession to the jury.

4. SAME—PROCEEDINGS IN SUIT—RECITALS IN DECREE.

The recitals in a decree duly entered in a foreclosure suit are sufficient prima facie evidence of the previous proceedings therein, although the original papers showing such proceedings are missing.

In Error to the Circuit Court of the United States for the Western District of North Carolina.

This was an action of ejectment by Henry Koons against J. B. Bryson and others. Upon the trial in the circuit court the plaintiff submitted to a nonsuit at the suggestion of the court, and thereupon brings error. Reversed.

Moore & Moore, for plaintiff in error.

Before GOFF and SIMONTON, Circuit Judges, and SEYMOUR, District Judge.

SEYMOUR, District Judge. This was an action of ejectment, tried in the circuit court for the Western district of North Carolina. Upon the conclusion of the plaintiff's evidence, the learned judge who tried the case in the circuit court ruled "that the plaintiff had failed to make out his case as to three material points: He had failed to locate the boundaries claimed; he had failed to make out a chain of title, there being one missing link—the lost record had not been supplied; and he had not shown the defendants in possession of the land claimed." Thereupon, in deference to the opinion of the court, the plaintiff took a nonsuit, and appealed. Judgment of nonsuit was duly signed by the judge.

Being a final judgment disposing of the case, and rendered upon a ruling on matter of law duly excepted to by the plaintiff, it is subject to review by writ of error. Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478. It can make no difference, being merely matter of form, whether the plaintiff takes a nonsuit in deference to the opinion of the court, or the court orders a nonsuit. The former is the uniform practice in the state

courts of North Carolina.    Mobley v. Watts, 98 N. C. 284, 3 S. E. 677.

We have not had the assistance of either an argument or a brief from the defendants, and can only conjecture the grounds upon which plaintiff's evidence was deemed insufficient to make out a prima facie case as to the location of boundaries and as to defendants' possession.

. 1. As to location of plaintiff's boundaries.    Plaintiff claims through mesne conveyances under three grants described in the declaration as Nos. 406, 628, and 389.    The dispute is as to the location of No. 406.    Plaintiff's contention is that the grant is bounded by the lines on the plat returned by the court surveyors.

The defendants claim that the boundaries of the grant are represented by the dotted lines on the plat marked 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 1. The defendants are said to claim under a grant from the state which includes the "gold mine" of the plat. If plaintiff's contention as to boundaries be correct, the mine is within the boundaries of grant 406. If defendants' claim of location be admitted, it is not. So the question raised is, whether there is evidence that should have been submitted to the jury in support of the former contention. On this question the plaintiff introduced the testimony of R. B. Justice, one of the two surveyors appointed by the court, and one of the signers of the plat referred to and printed herewith. Mr. Justice says in his testimony that, when he went into the community to survey "these lines," he knew nothing of the boundaries, and made inquiries "for the persons named in the certificate and survey to grant 406, viz. W. W. Lowdermilk and J. A. McCall, named as chain carriers in said survey." He could not ascertain the whereabouts of Lowdermilk, but found McCall. McCall, at his request, went with him to the black oak, located at D. Putting his hand on the black oak, which was marked as a corner, McCall stated that the surveyor began at this point; that they then ran east to the next corner at a chestnut. McCall went with witness along a marked line to the chestnut at E, and putting his hand upon the chestnut, which was marked, said, "This is the corner to which we run." In the same manner, alluding to Justice's testimony, McCall went with him to corners F, G, H, etc., until they reached A, pointing out the lines and corners. At or near A, as McCall told Justice, the original survey stopped. The other courses and distances were estimated. When the party reached A, as McCall declared, it became dark, and they only ran a short distance from that point south towards the South Carolina line. The call for the line A, B, witness (Justice) goes on to testify, of 110 poles did not take them to the South Carolina line, which is 276½ poles south of A. Contrary to what is indicated by the original patent and plat, the line of Jackson county is crossed by the line from A to the state line, so that upon reaching the latter, to reach the next corner called for, viz. the corner of Jackson county, the call must be reversed and a distance of about 28 poles must be run in a direction opposite to that called for in the grant. From the chestnut oak at corner A the boundaries described in the grant are:

"Thence S. 110 poles to the South Carolina line, thence S., 70° W., with said line, to a pine (80 poles) at the corner of Jackson county; thence N., 70° W., with said county line, 410 poles to a stake; thence N., 23° E., 180 poles to a black oak."

The black oak, as has been stated above, is identified in the declaration of McCall to the witness Justice as the initial point of the original survey, and is the D of the plat. McCall died after having been subpœnaed as a witness in this action. That his declarations as given by Justice, are competent evidence in North Carolina is undisputed. The evidence tends to locate, and must be held, in the present attitude of this case, absolutely to locate the bound-

aries of the patent from D to A in accordance with the plaintiff's contention. It is not necessary, for the purposes of this decision, to definitively locate the boundaries of A, B, C, D. In whatever manner the three courses from A to C may be run, whether or not it should be held that the corner of Jackson county and the South Carolina line must be a corner of the patent, and that one of its boundaries must run from such corner 410 poles with the Jackson county line, in any event the succeeding line of the patent must be run, regardless of course or distance, to the black oak identified by McCall as the beginning of the actual survey. Barclay v. Howell, 6 Pet. 498; Preston v. Bowman, 6 Wheat. 580; Morrow v. Whitney, 95 U. S. 551; Land Co. v. Saunders, 103 U. S. 316; Ayers v. Watson, 113 U. S. 594, 5 Sup. Ct. 641; Credle v. Hays, 88 N. C. 321; Baxter v. Wilson, 95 N. C. 137; Redmond v. Stepp, 100 N. C. 212, 6 S. E. 727. This being the case, the boundaries of the patent must of necessity include the gold mine. We are therefore of the opinion that plaintiff had, when he rested, made out his case on the question of boundary.

2. We also think that there was evidence, which should have been submitted to the jury, tending to show possession by defendant of part of the land claimed in the declaration. Such evidence is found in the testimony of W. H. Crowe, who testified that after defendants had obtained their grant, and prior to the commencement of this action, he went with one of the defendants, William McCall, to what was known as the gold mine to get some ore; that said McCall told him that they had dug the shaft and had cut timber on the land, out of which they had built a cabin and fence around the mine to establish their possession, and had kept it up and maintained it for that purpose. Witness further testified that this fence and cabin were there now (unless recently removed), and had been kept up by defendants ever since, and that defendants had at one time employed him as their agent to sell the land. Additional evidence of possession, corroborative of Crowe, is given in the testimony of Justice.

3. The other material matter, as to which the learned judge held that the plaintiff had failed to make out his case, was that he had failed to make out his chain of title, there being one link missing, —that the lost record had not been supplied. We think the court record, of which a certified copy was produced, is in itself sufficient, without any proof of the contents of the lost papers. After deraigning title from the state to one Zachery, plaintiff introduced a deed from Zachery to one Miller, conveying the lands described in the declaration, including those conveyed in grant 406. This deed bears date February 16, 1865. He then introduced a deed of the same date from Miller to Zachery, conveying the same lands in mortgage. He next introduced a transcript of the proceedings in a foreclosure suit in the superior court of Jackson county, N. C., brought by Wimbish et al., plaintiffs, against Miller, defendant, to foreclose this mortgage. Wimbish et al. were, as appears, assignees of the mortgage. The transcript shows proceedings in court beginning with the fall term of 1870 and ending with a final judg-

ment. It shows a jury trial and verdict at the spring term, 1875, and a judgment for plaintiffs. The decree appears to have been entered at the fall term of 1875, nunc pro tunc, as of the spring-term proceeding. It recites, among other things, the making of the mortgage, sets forth by reference thereto the land conveyed in it, and states the assignment of the mortgage to the plaintiff; it further recites as facts the due service of process upon Miller, and his appearance, as well as that of sundry parties claiming under him, who had made themselves parties by attorney; and it orders that the land conveyed in the mortgage be sold at auction by one C. A. Moore, commissioner, and directs him to make a deed to the purchaser at such sale, and that the defendants be foreclosed of all equity of redemption. Plaintiff then proved by the said Moore, commissioner, the sale at auction, and the making by him of a deed in pursuance thereof. Plaintiff further introduced a deed from Moore, commissioner, conveying the premises in pursuance of the sale to one Thaddeus C. Davis, and deeds carrying the title from Davis to himself. The missing link in plaintiff's chain of title, spoken of by the judge below, is a supposed insufficiency of the evidence with respect to the foreclosure suit. We are again embarrassed by the absence of any brief in behalf of the defendants. We are, however, informed that the alleged defect in the chain of title consists in the fact that the papers in the case of Wimbish v. Miller have been lost, and their loss not supplied. The material lost papers are, as we suppose, the summons, with proof of its due service, the declaration, containing a description of the land, and, perhaps, the order confirming the sale. But all that could be shown by these papers appears in the decree of foreclosure. That the recitals in the decree are at the least prima facie evidence of the facts recited may be conclusively proved by authority. Black, Judgm. §§ 270–277, inclusive; Galpin v. Page, 18 Wall. 350–366. The decree recites both service and appearance of defendants by attorney; it describes the land by reference to the mortgage, which appears in plaintiff's evidence, and it directs the commissioner to make title to the purchaser. The latter may be irregular, as contrary to the settled practice in North Carolina; but the direction is not void, and cannot be collaterally attacked. All these matters are concluded by the recitals in the decree. It is true that there are decisions which hold that it may be shown, as a defense to a suit in a judgment of a foreign state, that the party was not served and did not appear, although the record may state the contrary. Ferguson v. Crawford, 70 N. Y. 253. However this may be, we know of no case where the recital of an appearance or of service is held not to be prima facie evidence of those facts. If, however, it were necessary to supply the lost records, there was evidence upon that point that should have been submitted to the jury, viz. the testimony of Moore, the commissioner, who swore to the fact that all of them had been duly filed and had constituted parts of the record. The only possible objection to this evidence seems to be this: That the Code of North Carolina (section 60), having provided a method of supplying a court record in case of its loss, that method is exclusive.

The contrary, however, is held by the supreme court of North Carolina. Mobley v. Watts, 98 N. C. 284, 289, 3 S. E. 677; Clifton v. Fort, 98 N. C. 173–178, 3 S. E. 726.

The judgment of the circuit court is, therefore, reversed, at the cost of the defendants in error, and the cause remanded, with instructions to grant a new trial.