CALVIN J. COWLES v. SMITH W. COFFEY.

*Deed of Sheriff—Possession under color of title.*

1. A sheriff's deed, made in pursuance of an execution sale, operates from the day of the sale, not from the date of the deed.

2. In such case, the purchaser, being clothed with the legal title from the day of sale, is also subjected to the consequences attending a possession, under color, held adversely to him.

(*Hoke* v. *Henderson*, 3 Dev., 12; *Dobson* v. *Erwin*, 4 Dev. & Bat., 201; *Flynn* v. *Williams*, 7 Ired., 32; *Davidson* v. *Frew*, 3 Dev., 3; *Testerman* v. *Poe*, 2 Dev. & Bat., 103; *Presnell* v. *Ramsour*, 8 Ired., 505; *Woodey* v. *Gilliam*, 67 N. C., 237; *Dobson* v. *Murphy*, 1 Dev. & Bat., 586; *Pickett* v. *Pickett*, 3 Dev., 6, cited and approved).

EJECTMENT tried at Spring Term, 1882, of WATAUGA Superior Court, before *Avery, J.*

This action was begun on the 22d day of March, 1877. It is brought to recover the possession of land the title of which is claimed by both parties, as derived under one D. C. McCanless.

The plaintiff claims under a judgment and execution against the said McCanless and a sheriff's deed conveying the land as his property. The sale took place on the 16th day of November, 1859, one Deal being the sheriff of the county. The plaintiff was the purchaser, but took no deed at the time; nor until the 6th day of May, 1876, when he procured it to be made by the said Deal, who was still a resident of the county, though out of office.

In support of his title, the defendant offered in evidence a deed purporting to convey the same land from the said D. C. McCanless to J. L. McCanless, dated January 6th, 1859; also a deed from J. L. McCanless to John Horton, dated the 1st day of March, 1859, and a deed from Horton to himself, dated the 1st day of March, 1877. He also offered evidence tending to show that he, and those under whom he claims, had held continuous and adverse possession of the land from the first deed in 1859.

The plaintiff insisted that the deeds from D. C. to J. L. McCanless, and from the latter to Horton, were both made with the intent to defraud the creditors of the first grantor. This was denied by the defendant, who also insisted that, even conceding the deeds to have been fraudulently made, they still constituted color of title as against the plaintiff from the date of his purchase in 1859, and had ripened into a title under the statute of limitations. This, in turn, was disputed by the plaintiff, who contended that those deeds, being fraudulent, began to operate as color of title only from the time he procured his deed in 1876.

Under instructions given them by the court, the jury found the issues in favor of the plaintiff, and specially that the two

deeds above mentioned were fraudulent.   After judgment against
him the defendant appealed.

No counsel for plaintiff.
*Mr. A. S. Merrimon*, for defendant.

RUFFIN, J.   It is the well settled law of this state, that a
fraudulent deed is void to all intents, as well when attempted to
be set up as color of title, as when offered as title itself, and that
no length of possession under it will have the effect, under the
statute of limitations, to bar a creditor of the grantor.   *Hoke* v.
*Henderson*, 3 Dev., 12; *Dobson* v. *Erwin*, 4 Dev. & Bat., 201;
*Flynn* v. *Williams*, 7 Ired., 32.

The same authorities are direct also to the point, that so soon
as a sale by a creditor under an execution takes place, then such
deed, though previously inoperative, begins to operate as color of
title, and will ripen into a good title if seven years of uninter-
rupted adverse possession be thereafter had under it.

The principle upon which these decisions go, is, that the
statute of frauds makes the whole contract between the fraudu-
lent grantor and grantee void as against the creditor, so that the
possession of the one is the possession of the other, and there-
fore cannot be adverse to the creditor.   But, when the sale by
the creditor occurs, there is no such confidence or privity between
the purchaser and the grantee, and the possession of the latter
then becomes adverse.

So much, as we understand from the case, was conceded by
both counsel in the court below, and the only contention between
them seems to have been, whether in this particular case the deed
should begin to operate, and the statute begin to run against the
plaintiff, from the date of the sheriff's sale in 1859, or from the
time he procured his deed in 1876.   This question, we conceive,
to have been settled in principle by a series of decisions in this
court.

In *Davidson* v. *Frew*, 3 Dev., 3, it was held that a sheriff's

deed, whenever made, relates to the sale, and from that time vests the title in the purchaser, so as to defeat any intermediate transfer or incumbrance by the debtor; and this rule was followed, without question in *Testerman* v. *Poe*, 2 Dev. & Bat., 103; *Presnell* v. *Ramsour*, 8 Ired., 505; *Woodley* v. *Gilliam*, 67 N. C., 237.

So completely was it recognized in *Dobson* v. *Murphy*, 1 Dev. & Bat., 586, that the court held that the sheriff's deed, made seventeen years after the date of his sale, had such relation to the sale, and was so intimately connected with it, as that it would operate as color of title retrospectively; and give effect to possession taken at that time. It was likened to the case of a bargain and sale which must be registered before it can have any effect, but if registered, gives title or color of title, as the case may be, from the day of its delivery.

From these authorities, it would seem to follow as a necessary deduction in our case, that the two deeds held respectively by J. L. McCanless and Horton, begun to be color of title, and to be susceptible of maturing into a valid title, as against the plaintiff, from the date of his purchase in 1859. If, when subsequently obtained, his deed should have relation to the sale for any purpose, and when to his advantage, it must do so for all purposes, and though to his disadvantage. He cannot be permitted to enjoy its benefit in clothing him with the legal title from that day, without subjecting himself to the consequences attending an open and notorious possession held adversely to him.

But we are not left to mere inference in regard to the law on this point. In *Pickett* v. *Pickett*, 3 Dev., 6, the very question arose, and there was then a direct adjudication upon it. It was declared by the court, that the possession of a fraudulent donee became adverse to the purchaser under an execution in favor of a creditor of the donor, from the moment of the sale by the sheriff; and that what then became color of title, in such donee, had become title itself, even before the purchaser had taken his deed from the officer. It was said to be unnecessary to specu-

late as to where the legal title was in such case; that it was somewhere; and wherever it might be, the open possession of another under a distinct title must be treated as being adverse to it.

The plaintiff in this action acquired, by his purchase in 1859, an inchoate title to the land in dispute, which neither his debtor nor his fraudulent grantee could have defeated. It was his duty—as the law furnished him the opportunity to do—to have perfected that title by taking a deed from the sheriff, and his folly not to have done so. There can be no reason why he should not have been expected to complete and enforce his title, such as it was, in the same time that is prescribed for all other claimants, and his failure to do so is attended with the very mischiefs which it is the purpose of all statutes of repose to avoid.

For the reason that His Honor failed to instruct the jury as to the time when the statute began to run in favor of the defendant, this court thinks he is entitled to a *venire de novo*, and this makes it unnecessary to determine his other exception.

Error.                                        *Venire de novo.*