## SMYTHE *v.* HENRY *et al.*

(*Circuit Court, W. D. North Carolina.* February 11, 1890.)

1. EQUITY JURISDICTION—QUIETING TITLE.

Where a plaintiff in ejectment claims title through a deed and a patent valid on their face, but in fact void, the deed being forbidden by statute, and the patent being subsequent to another patent for the same land, a court of equity has jurisdiction of a bill to enjoin the prosecution of the action of ejectment, to cancel such deed and patent, and to compel discovery.

2. SAME—SALE OF LAND OF DECEDENTS.

Courts of equity have inherent jurisdiction, independent of statute, to decree a sale of the land of a decedent for the payment of his debts upon application of the devisee and the personal representative.

3. LEGISLATIVE GRANT—RESTRAINT ON POWER OF ALIENATION.

Under a legislative grant to an Indian, which confers on him the rights of citizenship, and gives him title to land in fee with the right of devising the same, but which expressly withholds from him the right of conveying it except by lease for a term of two years, a deed of the land by such Indian is void, the restraint on alienation not being inconsistent with either the estate granted or the citizenship conferred.

4. LIMITATION OF ACTIONS—ADVERSE POSSESSION.

Where such Indian attempts to convey such land by deed, and then accepts a lease of the land from his grantee, his possession is not that of his grantee, so as to set the statute of limitations in motion in favor of the grantee.

5. SAME—COLOR OF TITLE.

Such deed, being made in violation of an express statute, is not color of title.

6. ESTOPPEL BY DEED—LANDLORD AND TENANT.

In such case, the deed from the Indian being void, his execution of the deed and acceptance of the lease do not estop his devisees and their assigns from disputing the title of the grantee.

In Equity.

Bill by George B. Smythe against R. M. Henry and others, to enjoin the defendants from prosecuting a certain action of ejectment, and to have certain deeds canceled as clouds on complainant's title to the land sued for in the action of ejectment.

*W. H. Malone* and *Theo. F. Davidson,* for complainant.

*Cobb & Merrimon, Jones & Shuford,* and *Henry Hardwick,* for defendants.

DICK, J. When the pleadings and proofs in this case were read at the hearing, I was so well satisfied that the complainant was entitled to the relief that he prayed for that I declined to hear any arguments from his counsel. The argument of the counsel for the defendants was so learned, able, and logically arranged, and was urged with such earnest confidence, that I concluded to postpone my decision until I had time to examine the authorities cited, and give the case my most mature consideration. The counsel on both sides have furnished me elaborate arguments and briefs, but, from the views which I take of the questions of law and fact involved, I think that I can properly determine the rights of parties upon the pleadings, the documentary proofs, and the uncontroverted evidence, without attempting to ascertain the preponderance in the conflict of testimony, or considering fully the many questions of law discussed in the arguments of counsel.

The first defense insisted upon by the counsel of the defendants is

v.41F.no.13—45

that the bill of complainant does not show such a case as to entitle him to equitable relief; for, as to the matters alleged, he has a complete and adequate remedy in a court of law.    I am of the opinion that the allegations in the bill, and the facts and circumstances developed by the proof, made a resort to a court of equity highly expedient and proper. I will give my reasons for so believing in a subsequent part of this opinion, when I have decided the questions of law involved, and stated my conclusions as to the uncontroverted matters of facts presented in the evidence.

Both parties claim to have derived title to the land in controversy under a grant of the state to the Cherokee chief Junaluska, and I will first consider the nature and purpose of such grant.    An act of the state legislature, entitled "An act in favor of the Cherokee chief Junaluska," was duly enacted and ratified on the 2d day of January, 1847.    The first section conferred upon him all the rights, privileges, and immunities of a citizen of the state.    The second section enacted "that the secretary of state be authorized and directed to convey unto the said Junaluska in fee-simple the tract of land in Cherokee county, in district No. 9, tract No. 19, containing three hundred and thirty-seven acres; which said land the said Junaluska shall be empowered to hold and enjoy, without the power to sell or convey the same, except for the term of two years, from time to time: provided, nevertheless, that he shall have full power to dispose of the same by devise only."    The third section directed the treasurer of the state to pay the said Junaluska the sum of $100.    The fourth section gave the act full force and effect from and after its passage.

This was clearly a donation act, and from its passage vested in Junaluska a title to the land specifically described, and directed to be conveyed by a grant to be executed by the secretary of state.    The grant was duly executed on the day of the passage of the donation act.    The execution of the grant was a mere ministerial act of the officer charged with the duty to be performed as directed by the legislature.    The grant was additional and convenient evidence of the title to the land previously conveyed by the donation act, and related back to the inception of the rights of the grantee, and could not change the title as originally conferred.    A legislative grant that proceeds more immediately from the source of title is entitled to greater weight and dignity than a grant executed by a ministerial officer acting under the provisions of the statute. *Morrow* v. *Whitney*, 95 U. S. 551; *Barney* v. *Dolph*, 97 U. S. 652; *Whitney* v. *Morrow*, 112 U. S. 693, 5 Sup. Ct. Rep. 333.

The inducement, object, and purpose of the legislature in bestowing the land upon Junaluska was clearly expressed in the explanatory clause that preceded the first section of the act.    He had rendered important military service to the United States in the last war with Great Britain. He had returned from the Indian country beyond the Mississippi, and had expressed a wish to become a resident and citizen of his native state. The benignant purpose of the legislature in the bestowal of its bounty was to provide a permanent home and farm for its old and worthy ben-

eficiary, and to guard his inexperience in business matters against the designs and crafts of shrewd and selfish white men, and protect him from temptations which might induce him to make an improvident disposition of his property, and thereby reduce himself and family to indigence and want. We may well infer that the gift of $100 was intended to meet necessities that might arise before he could make a crop the ensuing year.

It is insisted that the restriction imposed upon the rights of alienation by the second section of the act is inconsistent with the spirit and purpose of the first section, which conferred upon Junaluska all the rights, privileges, and immunities of citizenship. When a state conveys land as a bounty, it can impose any restriction deemed proper upon the grantee. When we consider the condition of that new citizen we may well conclude that the restriction was not unreasonable, but was rather just, wise, and beneficent. Junaluska belonged to a subordinate race. He had spent most of his life with untutored Indian tribes beyond the Mississippi, and had returned in his old age to the former hunting grounds of his fathers. He had little experience in the ways and transactions of civilization, and might well regard the white man as his superior in intelligence, wisdom, and power. He knew comparatively nothing of the value of land for agricultural purposes, and of the benefits and pleasures of a permanent home. Subsequent events soon manifested the wisdom of the legislature in placing restriction upon the alienation of its bounty; for, in 20 days after the date of the grant, Junaluska was induced to execute a deed to S. P. Sherrell for the land, upon the fictitious consideration of $1,500 expressed in the deed; and under that deed the defendant herein claimed title, and instituted an action to recover possession from a *bona fide* purchaser for full value.

The counsel of defendants further insist that the condition of nonalienation imposed upon the fee-simple conveyed in the donation act is repugnant to the nature of the estate, and is therefore void. That old and well-settled rule of the common law does not apply to this legislative grant. The sovereign power of the legislature is superior to the immemorial rules and usages of the common law. The legislative power of the state is restricted only by the state and federal constitutions, and it may change the rules of the common law whenever such alterations are deemed best for the general welfare, and do not conflict with the constitutional rights of citizens. *Munn* v. *Illinois,* 94 U. S. 113. Such restricted operation of the common law was expressly declared by statute in 1715, which is still incorporated in the statute law of this state. 1 Code N. C. § 641.

I am of opinion that the manifest intent of the legislature was to keep the title to the land conveyed by grant in Junaluska during his life, so that it could not be divested by his own act, or by any of the presumptions or rules of law that usually apply in cases of laches, forfeiture, reverter, estoppel, and color of title. Junaluska had a fee-simple that could not pass from him in any way, except by devise or descent. He could transfer the possession of the lands by a lease, from time to time, of two years. The power of alienation regulated by statute must be

strictly complied with, so that the policy and object of the statute may not be defeated. 1 Story, Eq. Jur. §§ 96, 178.

With this view of the law, it is unnecessary for me to consider the evidence as to whether the Sherrell deed was fraudulent on account of the gross inadequacy of the real consideration, concealed under the false consideration expressed in the deed, or the constructive fraud arising from long concealment, and failure to register the instrument, and his non-claim for more than 25 years while living in the vicinity. This evidence will be referred to when I come to consider the question of equitable jurisdiction, founded upon alleged actual and constructive fraud.

I will now consider the Sherrell deed in the light of an honest transaction. This deed of bargain and sale conveyed only the interest in the land which the bargainer had a right to convey. It gave rise to no cause of forfeiture, and did not entitle the state to enter for the breach of any condition, express or implied. No such provision was made in the donation act or the grant. *Ruch* v. *Rock Island*, 97 U. S. 693; *Grinnell* v. *Railroad Co.*, 103 U. S. 739. We will now suppose that this lease by bargain and sale conferred a term of two years upon Sherrell, and transferred possession without entry. Sherrell was lessee, and Junaluska was lessor with a reversion in fee. When Sherrell made Junaluska a lessee for the whole term, it amounted to an assignment of the term to Junaluska, and at once became merged in the fee, and Sherrell was only entitled to the rent reserved. This was the result, as there was no expressed intent that there should be no merger. But suppose there was no merger, then, when Sherrell's term of two years expired by effluxion of time, Junaluska having the reversion in fee and the actual possession, no entry was necessary to reinvest him with the unincumbered fee.

It is insisted that, as the deed to Sherrell purported to convey a fee, the grantor was estopped from denying the title of the grantee, and that this estoppel extended to all persons claiming under the grantor. The doctrine of estoppel cannot be applied when it would thwart any declared purpose of a statute, or any well-settled rule of the common law, as in the cases of infants and married women. *Sims* v. *Everhardt*, 102 U. S. 300; *Drury* v. *Foster*, 2 Wall. 24; Bigelow, Estop. 245. An invalid deed does not work an estoppel. Id. 253; *Bank* v. *Banks*, 101 U. S. 240.

It is further insisted that, as Junaluska became the tenant of Sherrell, he could not deny his landlord's title. An estoppel between tenant and landlord rests upon considerations of public policy. It cannot apply where its allowance would contravene a public policy expressed in a positive statute. Junaluska was restricted as to making a direct alienation, and no presumption or rule of the common law could allow him to pass his title by agreeing to become a tenant of Sherrell. Where a statute positively declares that a thing shall not be done, the law will not suffer its policy and purpose to be thwarted by any subterfuge or ingenious contrivance clothed with the semblance of legality.

It is further insisted that the deed to Sherrell was at least color of title, and gave him a right to the land by reason of his first possession, and the continuous possession of his tenant Junaluska for seven years. I am

of the opinion that a deed made in violation of the provisions of an express statute is void for all purposes, and will not constitute a color of title so long as it contravenes such expression of legislative will. *Cowles* v. *Coffey*, 88 N. C. 340; *Hall* v. *U. S.*, 92 U. S. 27; *Gibbs* v. *Gas Co.*, 130 U. S. 396, 9 Sup. Ct. Rep. 553. There are numerous decisions in the courts which declare that a void and worthless deed will constitute color of title that will have operation under statutes of limitation, but such deeds were void for other causes than those which contravene an express prohibition of a statute, or some well-established policy of the law. I will not further discuss this question, for, conceding that the deed to Sherrell was color of title, he did not have the continuous possession to ripen his colorable title into a complete title. For this purpose there must be on the part of a claimant such actual adverse possession as will expose him to an action by the owner to recover his rightful possession. In this case the owner was in possession, exercising acts of dominion over the land hostile to Sherrell's claim, and manifesting his intent to hold under his legal title. The possession of the claimant must be adverse to the real owner, and where the real owner is in possession such possession must be adjudged to be with the title. *Powell* v. *Felton*, 11 Ired. 469. The well-settled rule of law that a tenant is estopped from denying his landlord's title is not applicable to the facts in this case. It only applies where a landlord is seeking to recover possession from his tenant, or those claiming under him, and not where a landlord is endeavoring to ripen his color of title under a void deed into a valid title, and the tenant disclaims and holds adversely. The disclaimer of tenure at once puts an end to the relation of landlord and tenant, and the tenant is then a trespasser. If the landlord desires to preserve the continuity of his possession, he must recover the possession from his disclaiming tenant, and put in a tenant who will properly attorn. A claimant under color of title must hold continuous possession for seven years by himself, or a tenant who recognizes him as landlord. Bigelow, Estop. 373; *Willison* v. *Watkins*, 3 Pet. 43; *Walden* v. *Bodley*, 14 Pet. 156.

Under any view of the law and facts in this case, Sherrell was without title to the land in controversy after the expiration of his lease for two years. It is therefore unnecessary to consider the testimony in relation to the rescission of his deed by the parties when the expected exchange of lands with Bedford Sherrell failed to be accomplished, or to the abandonment of claim by Sherrell, or to his acquiescence in the claim and possession of G. W. Hayes, or to Sherrell's concurring conduct when the land was sold by the administrator and devisees of Junaluska, and when subsequently sold by the administrator of G. W. Hayes, when the complainant became the purchaser at judicial sale for full value. These matters of fact may well be considered as badges of fraud when associated with his attempt to convey such land to the defendant Henry for the purpose of instituting the action of ejectment now pending in this court on the law side of the docket.

The complainant in his amended bill alleges that, after his purchase at judicial sale, the defendant Henry obtained a grant from the state for

the land in controversy. As the state had previously conveyed title to Junaluska, the land was not subject to entry, and the junior grant to Henry was void. It, however, is color of title, and casts a cloud upon the title of the complainant, who has a clear equitable right to have such grant declared void by a decree of this court. The grant is regular on its face, and has been duly recorded, and is set up as a claim of title in the pending action of ejectment. Its invalidity may be shown by evidence in such action at law, but that would not revoke the grant, and only a court of equity can effectually remove this cloud from the title of complainant. *Van Wyck* v. *Knevals*, 106 U. S. 360, 1 Sup. Ct. Rep. 336.

The complainant claims title to the land in controversy as a *bona fide* purchaser at a judicial sale made under a decree of a court of competent jurisdiction, and it is a well-settled rule of law, founded upon principles of justice and sound policy, that every reasonable intendment should be made to support the title of a *bona fide* purchaser at a judicial sale, decreed and confirmed by a court of competent jurisdiction over the subject-matter, although its proceedings may be defective and irregular in form. Every presumption not inconsistent with the record is to be indulged in in favor of the jurisdiction, as it is to be supposed that a competent court knows its own legal power and duty, and will not exceed its legitimate authority. Cooley, Const. Lim. 408; *Williams* v. *Harrington*, 11 Ired. 616; *England* v. *Garner*, 90 N. C. 197; *Applegate* v. *Mining Co.*, 117 U. S. 255, 6 Sup. Ct. Rep. 742; *Robinson* v. *Fair*, 128 U. S. 53, 9 Sup. Ct. Rep. 30. The legal proceedings in the case of G. W. Bristol, administrator of G. W. Hayes, seem to have been regular, and I cannot doubt that the complainant acquired by his purchase at the judicial sale all the right and title of the intestate to the land in controversy. It is unnecessary to inquire as to what right Hayes acquired by his long possession under the deed from Junaluska, dated 5th of June, 1850, as Hayes did not rely upon his color of title and possession, but allowed the land to be sold at a judicial sale decreed by the court of equity upon the petition of the devisees and administrator of Junaluska, and became the purchaser at full value, and paid the purchase money, which was partly used in the payment of the debts of the testator, and the balance was duly distributed among the devisees. Hayes died before a deed was made by the commissioners of sale, but when he paid the purchase money under the decree confirming the sale, which ordered a deed to be executed, he became entitled to the land, and the title descended upon his heirs, "as what ought to be done is considered in equity as done." The administrator of Hayes had a right to sell such interest to realize assets under the license granted him by the court. Rev. Code, c. 46, § 53.

It is further insisted that the complainant acquired no title under the deed executed by N. S. Garrett, administrator of Junaluska, as the court of equity had no jurisdiction of the case in which the decree and confirmation of sale were made. The objection urged to the jurisdiction of the court is that a court of equity, as it then existed in this state,

had no power to grant a license to an administrator to sell the lands of his intestate to realize assets for the payment of debts. Every description of property, whether real or personal, is liable for the payment of debts, and it is the duty of a personal representative of a decedent to make sale of a sufficient amount of property to pay the debts against the estate. The personal property must first be sold to make assets, and, if not sufficient, then the lands devised or descended upon the heirs must be sold, and creditors could in a court of equity compel such personal representative to make sale of lands to realize assets.

By the act of 1846, (Rev. Code, c. 46, § 44,) an executor or administrator was directed to apply by petition to the county or superior court for a license to sell lands to make assets for the payment of debts when the personal property which came to his hands was insufficient. The heirs, devisees, and other persons interested were required to be made parties, and when all parties were before the court a decree could be made for the sale of all or such part of the land as should be deemed proper. This was in the nature of an equity proceeding, to be heard on the law side of the docket by the same judge who held the court of equity, and was intended to furnish a more simple and less expensive mode of procedure than had before prevailed in subjecting lands to the payment of debts contracted by decedents. Courts of equity have long assumed concurrent jurisdiction in the administration of assets, and have often exercised such jurisdiction in cases of complication and difficulty. Previous to the constitution of 1868, there were separate courts of equity in this state which were invested with as full and complete equitable jurisdiction as is now exercised in equity by the circuit courts of the United States. Tenants in common could have partition by proceedings in a court of law, but if it was for their best interest to have a sale of the land they had to resort to a court of equity. *Donnell* v. *Mateer*, 7 Ired. Eq. 94. Courts of equity freely exercised jurisdiction in decreeing the sale of lands belonging to infants for the payment of debts or other purposes of manifest benefit. *Williams* v. *Harrington, supra; Sutton* v. *Schonwald*, 86 N. C. 198; *Houston* v. *Houston*, Phil. Eq. 95. Under the will of Junaluska, his widow was devisee for life, with remainder in fee to her infant children. In their petition to the court of equity they represented that the estate of their testator was largely indebted, and that their immediate wants and best interests required the sale of the land. Surely the joinder of the administrator in their petition did not oust the jurisdiction of the court of equity in giving its beneficent relief to the widow and children which they so earnestly prayed. *Hinton* v. *Powell*, 1 Jones Eq. 230. The court certainly had jurisdiction of the subject-matter, and the consent of the administrator gave the court jurisdiction to make a decree that a part of the proceeds of sale should be applied to the payment of debts. *Greer* v. *Cagle*, 84 N. C. 385; *Planing Mills* v. *McNinch*, 99 N. C. 517, 6 S. E. Rep. 386.

There was another ground of equitable relief which clearly sustained the jurisdiction of the court of equity in decreeing a sale. The petitioner Nicey was a devisee for life, and a sale of the lands was necessary for

the payment of the debts of the devisor. The statute (Rev. Code, c. 118, § 8) secures to the widow in such cases the equity of subrogation, by providing that the land devised to a widow shall be exempt from liability to creditors, in the same way that her dower would have been to the extent of the value of the dower. Such rights of the widow, under the old system of courts in this state, was enforced by a court of equity, and there is no reason why the administrator should not consent to become a party to a friendly *ex parte* petition in equity, and have the rights of all persons ascertained and adjusted. *Mitchener* v. *Atkinson*, Phil. Eq. 23; *Ex parte Avery*, 64 N. Y. 113. In this case, on petition of the widow, the children by their guardian, and the administrator of Junaluska, the court of equity decreed a sale, the sale was made, and G. W. Hayes was the purchaser at an adequate price. The sale was duly confirmed by the court, the purchase money was paid, and part was applied to the payment of debts, and the balance was distributed to the widow and the guardian of the children under the arrangement and order of the court. When land has been sold under the decree of a court of equity, the purchaser will be protected against the legal claim of any one who, or whose guardian, was a party to the decree. *Sinclair* v. *Williams*, 8 Ired. Eq. 235; *McNitt* v. *Turner*, 16 Wall. 352.

During the late civil war the court-house of Cherokee county was burned, and many of the papers and a large part of the record in the case we have been considering were destroyed. The original petition, the report of the commissioner of sale, some fragments of papers, and a few docket entries were preserved. At March term, 1872, of the superior court of Cherokee county, to which the records of the former court of equity were transferred by express provision of law, a motion was made in the cause to institute proceedings to restore the lost record and papers. The court could properly grant the motion. *Stanly* v. *Massingill*, 63 N. C. 558. An order was made referring the matter to the Honorable A. T. Davidson, a lawyer of high character, distinguished ability, and long and large professional experience in that court; and he was authorized and directed to take testimony on the subject, and report, as far as possible, the nature and contents of such lost record, and the evidence upon which he founded his report. All available evidence was taken by the commissioner, and he made a report, and by order of the court such report was entered upon the record, and declared to be the record of the case. A duly-certified copy of such restored record is now before me.

There is an act of congress, and also a statute of this state, providing modes of procedure for putting in permanent form proof of the contents of judicial records, lost or destroyed; such proof to take the place of the original records for all purposes. Such proceedings are not the only methods by which the contents of lost and destroyed records may be shown in evidence by interested parties. *Hare* v. *Hollomon*, 94 N. C. 14; *Mobley* v. *Watts*, 98 N. C. 284, 3 S. E. Rep. 677. I have no judicial power to declare such restored record inoperative after it has been made by a court of competent jurisdiction, and I have no inclination to do so, as the facts and circumstances satisfy me that such record is

correct, and in furtherance of substantial justice. *Cornett* v. *Williams,* 20 Wall. 226; *Williams* v. *Harrington, supra.*

That record shows that James Junaluska, a defendant in the case now before us, was a party to the proceeding under which the land in controversy was sold at judicial sale to G. W. Hayes, who paid full value, and such purchase money was honestly applied in the payment of the debts, and in distribution among the widow and children, of old Junaluska, and the defendant received his proportionate share. The court properly made an order for the deed to be executed by Garrett to the present complainant, as he was a *bona fide* purchaser of all the legal and equitable rights of G. W. Hayes. In the case of *Sinclair* v. *Williams,* 8 Ired. Eq. 236, the facts being similar to those in this case, the court of equity said: "The plaintiff has a clear right to the interference of the court. He is a purchaser under a decree, and the court is bound to enforce its decrees, and to protect those who act under its 'orders." *Davis* v. *Gaines,* 104 U. S. 386; *Hare* v. *Hollomon,* 94 N. C. 14.

There is another equitable right of the complainant in this case against James Junaluska, which can only be administered on the equity side of this court. He purchased all the rights of G. W. Hayes, who was a *bona fide* purchaser at the sale of N. S. Jarrett, administrator of Junaluska, and the purchase money was applied as heretofore stated. If Hayes acquired no title to the land, he had the clear right to apply to a court of equity to be subrogated to the rights of creditors and devisees to the extent of the purchase money, and hold the land bound for repayment, and for reimbursement for expenditures for improvements which increased the value of the land, after deducting rent and profits over and above the interest of the purchase money. *Perry* v. *Adams,* 98 N. C. 167, 3 S.E. Rep. 729. I will not further discuss this phase of the subject, as I think that the defendant James Junaluska was bound by the sale, as he was a party to the decree under which Jarrett sold the land; and the complainant is clearly entitled to have a decree for a perpetual injunction restraining such defendant from further prosecuting his action of ejectment now pending in this court.

I will now proceed to consider the objections to the jurisdiction of this court, so ably and confidently urged by the counsel of the defendants in their printed argument and brief of cited authorities. It is unnecessary for me to dwell upon that part of the argument that relates to the technical name and nature of the bill of complainant, as that matter is well settled by decisions of the United States supreme court. The bill has the form and many of the elements of an original bill, and could be so considered if there was no other litigation existing between the parties in this court about the same subject-matter; and no objection could be made to jurisdiction on account of the citizenship of the parties, as the complainant is a citizen of Ohio, and the defendants are citizens of this state. The bill is an auxiliary bill, filed to prevent injustice and inequitable advantage in an action at law now pending in this court between the same parties and about the same subject-matter. *Jones* v. *Andrews,* 10 Wall. 327; *Christmas* v. *Russell,* 14 Wall. 69; *Krippendorf* v. *Hyde,* 110

U. S. 276, 4 Sup. Ct. Rep. 27.   I will refer in general terms to the *prima facie* case made out by the pleadings, and the proof offered by the plaintiff.   It appears that the complainant was a *bona fide* purchaser of the lands in controversy at a judicial sale; that he paid full value; the sale was duly confirmed by the court, and a deed was duly executed, and he entered into possession, and continued such possession to the time he filed his bill; that when he purchased said lands he had no notice of any adverse claim of the defendants, and the defendant R. M. Henry was attorney of some of the parties to the decree of sale, and was fully cognizant of all the legal procedure under which the land was sold to complainant; that on the 3d of March, 1873, the defendant Henry caused to be registered a deed to said land executed by Junaluska to S. P. Sherrell, on January 22, 1847, and also caused to be registered a deed to himself executed by said Sherrell dated March 3, 1873, and that both of said deeds are on their face regular in form, but were without any adequate consideration; that defendant Henry obtained a grant in due form from the state for said lands, dated 17th July, 1873, and founded upon an entry made August 1, 1871, 18 days before the sale of the land to complainant; that on the 25th of November, 1873, the defendant Henry commenced an action of ejectment against the complainant to recover the possession of said land, and such action was removed to this court, where it is now pending.   Upon these facts and circumstances alone, which are not controverted, the complainant, as a *bona fide* purchaser, had ample ground for resort to a court of equity to have said deeds and grant canceled, so as to remove a cloud from his title.

The complainant makes allegations of other matters of fact tending to show actual and constructive fraud; the rescission of the unregistered deed of Sherrell by the act of the parties; the abandonment of all claim to the land on the part of Sherrell; his acquiescence in the claim and long possession of G. W. Hayes; his full knowledge and participation in the legal proceedings under which the administrator of Junaluska sold the lands to G. W. Hayes at judicial sale; and his full knowledge of the legal proceedings under which the administrator of Hayes sold the lands to the complainant at judicial sale; that said Sherrell made no claim to the land until he executed a deed to defendant Henry for a nominal consideration; and that said Henry had full knowledge of Sherrell's connection with the land, and his relations with the parties claiming and possessing the land for more than 30 years, and of the title of Hayes, as he was the legal adviser and attorney of the children of Hayes, when the land was sold by the administrator of Hayes, when complainant became the purchaser.   As to these and other matters alleged, the plaintiff seeks discovery from the defendants to aid him in establishing his right to the equitable relief prayed for in his bill of complaint.

It is insisted that the plaintiff has the right, and can have the opportunity, of proving all of his allegations in the action of law now pending on the law side of this court, and that, thus having a complete and adequate remedy at law, he cannot maintain this suit in equity.   I readily concede the well-settled rule of jurisdiction often announced by courts of

equity, and fixed in statutory form in section 723 of the United States Revised Statutes. The supreme court of the United States has often said that this statute was merely declaratory, making no alteration in the rules as to equitable remedies. The principle announced in *Boyce* v. *Grundy*, 3 Pet. 210, has often been affirmed and applied. To bar a suit in equity, the remedy at law must be as efficient to the ends of justice, and its complete and prompt administration, as the remedy in equity. In the United States circuit courts of equity it has been held that the legal remedy must be such as can be afforded on the law side of the docket. It is well settled that United States courts are not ousted of their equitable jurisdiction, or even restricted, by state legislation conferring such jurisdiction upon courts of law. Equitable relief in United States courts can only be administered by proceedings on the equity side of the court. *McConihay* v. *Wright*, 121 U. S. 201, 7 Sup. Ct. Rep. 940; *Ridings* v. *Johnson*, 128 U. S. 212, 9 Sup. Ct. Rep. 72. If a defendant in an action at law has equitable grounds of relief against the plaintiff, he must seek to enforce them in a separate suit in equity, and, on his doing so, the action at law will be suspended until such equities are determined. *Railroad Co.* v. *Paine*, 119 U. S. 561, 7 Sup. Ct. Rep. 323. The right to enforce discovery has ever been regarded as one of the oldest, plainest, and most effective remedies of equitable jurisdiction, and is not taken away by any increased legal remedy. 1 Story, Eq. Jur. 64; *Oliveira* v. *University*, Phil. Eq. 69.

The fact that a plaintiff can have concurrent remedies at law and in equity will not oust the court's equitable jurisdiction. The rule as to adequate and complete remedy at law does not apply to cases where the concurrent jurisdiction of the court of equity has been long and fully established, and often exercised. *U. S.* v. *Myers*, 15 Myers, Dec. § 938. In every bill that seeks relief the complainant is entitled to a disclosure from the defendant, on his oath, of the truth of the matters and circumstances constituting the plaintiff's case, as alleged in his bill. This right of discovery is especially important in a case like the one before us, where the nature of the alleged transactions have been obscured by long lapse of time, and nearly all the persons who would probably know the attendant facts and circumstances are dead. The mere fact that statutes have conferred uponcourts of law the power to compel parties to the record to testify as witnesses does not deprive a party in courts of the United States of the right of discovery in equity when seeking equitable relief. Such legal remedy is not as effectual as the equitable remedy. If a plaintiff should introduce his adversary as a witness, he is not allowed to assail the character of, or cross-examine, his own witness. *Strudwich* v. *Brodnax*, 83 N. C. 401; *Bell* v. *Pomeroy*, 15 Myers, Dec. § 2125. This method of examination is not as efficient as skillfully drawn interrogatories in equity, which the defendant must answer fully, directly, positively, and to the best of his knowledge, information, and belief. By excepting to the insufficiency of an answer, a plaintiff can have all the benefits of a searching cross-examination, and give rise to no implication as to the good character of the defendant.

It is further insisted that the complainant can have full opportunity in the pending action at law to prove the invalidity of the deeds and grant of defendants. This is not the equitable remedy which the plaintiff seeks in this suit. The deeds and grant are all regular on their face, and are duly registered, and the complainant wishes to have them canceled, so as to remove the cloud from his title. Where a deed is void, and can be so proved at law, courts of equity still have jurisdiction to cancel them to remove a cloud from title. Such jurisdiction is inherent in courts of equity, and is readily exercised when there is an instrument that ought not to be used or enforced, and it is against conscience for the party holding it to retain it. 2 Story, Eq. Jur. § 700; *Holland* v. *Challen*, 110 U. S. 15, 3 Sup. Ct. Rep. 495. Equity is the proper forum to have a subsequent state grant declared void. *Benzein* v. *Lenoir*, 1 Dev. Eq. 225; *Jones* v. *McMasters*, 20 How. 8. Every instrument purporting by its terms to convey land from the original source of title, however invalid, creates a cloud upon the title, if it requires extrinsic evidence to show its invalidity, and the existence of such patent furnishes ground for equitable relief. *Van Wyck* v. *Knevals*, 106 U. S. 360, 1 Sup. Ct. Rep. 336. There is another ground of equitable jurisdiction arising out of the peculiar facts and circumstances of this case. Courts of equity are better adapted to the settlement of questions relating to the title to land where different titles are claimed under different patents and entries, and such questions ought to be excluded from courts of law. *Polk* v. *Wendal*, 9 Cranch, 87–99; 1 Story, Eq. Jur. § 437. I have already sufficiently referred to the various claims of different parties to the land in controversy, founded upon an original grant that required legal construction; upon a subsequent grant; upon an old and long unregistered deed; upon color of title and possession; upon equitable estoppels; upon a judicial sale, where no deed was executed to the purchaser, as ordered by the court, and the record of such proceeding was destroyed by fire; and the evidence of attendant circumstances is obscured by long lapse of time, and much of the testimony is lost by the death of parties and witnesses. Surely this complication of claim and title can be more effectually unravelled, and the rights of parties ascertained, and justice properly administered, by the flexible and easily adjusted modes of procedure in a court of equity, than by the excited contentions before a jury in a trial at law. Much of equitable jurisdiction consists of better and more effective remedies for adjusting and attaining the rights of parties. There are elements of actual and constructive fraud alleged in the bill, presented in the proofs, and strongly urged in the argument of the counsel of the complainant, that would afford clear ground for equitable jurisdiction; but I will not dwell upon such matters, as other allegations of the complainant's bill are sufficiently sustained by the proofs, to establish his title to the land in controversy, and warrant the relief he prays. This court having acquired jurisdiction of the subject-matter, and it appearing that the complainant has a just title to the lands in controversy in this suit, it is the duty and it is within the power of this court to give him complete relief as to the action of ejectment now pend-

ing on the law side of this court, and as to the cloud that rests upon his title.    1 Story, Eq. Jur. § 64*k; Ober* v. *Gallagher*, 93 U. S. 199; *Ward* v. *Todd*, 103 U. S. 327; *U. S.* v. *Myers, supra*.    A decree may be drawn directing the cancellation of the deed executed by Junaluska to S. P. Sherrell, dated January 22, 1847, and the deed executed by S. P. Sherrell to R. M. Henry, dated March 3, 1873; and also declaring void the grant of the state to R. M. Henry, issued 17th day of July, 1873; and also directing a writ of injunction to be issued and served on the parties defendant in this suit, perpetually enjoining them as to the further prosecution of the action of ejectment now pending on the law side of this court, originally docketed R. M. Henry v. George B. Smythe.    Let the defendants be taxed with costs.