OWENS VS EATON.

Opinion delivered October 19, 1904.

1. *Indian Lands—Void Leases—Unlawful Detainer.*

By Act of Cong. June 28, 1898, agricultural leases of Indian lands terminated on Jan. 1, 1900 and after that date were wholly void; and a lessee under such a lease cannot therefore maintain unlawful detainer against his tenant holding over.

2. *Unlawful Detainer—Tenant may Deny Landlord's Title, When.*

In an action of unlawful detainer brought by one who holds Indian lands under a lease which is void and made for purposes in violation of law, his sub-tenant may deny the title of the person under whom he entered.

3. *Unlawful Transactions—Parties Engaged Therein in Pari Delicto—Courts Closed Against.*

Where parties are engaged in transactions involving leases and sub-
leases of Indian lands all void under the law and against the public
policy, they will be held in pari delicto and the courts will be closed
against the complaints of any against the others.

Appeal from the United States Court for the Northern
District.

JOSEPH A. GILL, Judge.

Action by R. T. Owens against J. H. Eaton. Judgment
for defendant. Plaintiff appeals. Affirmed.

This was an action of unlawful detainer instituted by the
appellant in January, 1902, to recover 80 acres of land situate in
the Cherokee Nation, and particularly described in the complaint.
The facts out of which the controversy arose are as follows: On
January 13, 1898, L. L. McGrady and wife leased to James
Mynnahan the land in controversy for a period of five years from
January 1, 1898. On October 13th, following, Mynnahan sold
and transferred his interest in said lease to J. M. Bloodworth.
On February 13, 1901, Bloodworth leased the land to R. T.
Owens and J. H. Eaton, appellant and appellee in this suit; said
lease beginning January 1, 1901. On May 29, 1901, in considera-
tion of the sum of $650, Bloodworth sold all of his interest in the
aforesaid contracts to R. T. Owens. Neither of these parties
who were holding the land were citizens of the Cherokee Nation.
After the assignment of the Mynnahan lease by Bloodworth to
Owens, executed on May 29, 1901, the defendant, Eaton, paid
his share of the rent of the premises to plaintiff. After the term
of the Owens and Eaton lease had expired, the defendant, Eaton,
holding over, the plaintiff brought this action to recover the
possession of the premises. The case was tried to a jury, and,
after the facts had been shown by plaintiff's proof, the defendant

offering no testimony, the court directed a verdict for the defendant, to which exception was duly taken. Motion for new trial was filed, overruled, and exception saved, and the cause regularly appealed.

*Watts & Watts* and *Hutchings, West & Parker*, for appellant.

*T. F. Shackelford, J. G. McCombs,* and *Shackelford & Curts,* for appellee.

CLAYTON, J. There is but one specification of error relied on by appellant. It is: "The court below erred in directing the jury to return a verdict for the defendant." The charge of the court was as follows: "Gentlemen of the Jury: In this case Mr. Owens sues the defendant, Eaton, for an unlawful detainer of certain premises that are described in the complaint. The claim by Mr. Owens is that he owned the premises by reason of an assignment of a lease contract for the year 1902. It seems from the testimony that has been introduced that for the year 1901 from some one who had a long-term lease contract on them, and that he and Mr. Eaton jointly went into a lease of these premises that they occupied the premises together in 1901 as joint tenants; that during that year that Mr. Owens bought out the interest of their landlord, and assumed the landlordship of the land for 1901. Now, it seems that Mr. Eaton held over under that contract, and went into the possession of the lands for the following year. Eaton, however, did not return possession of the lands to Mr. Owens, but just simply continued in possession, and undertook to turn him out, and did recognize another landlord, the owner of the premises. The court intends to instruct a verdict for Mr. Eaton in this case, for the reason that neither of these parties had any rights in those premises after the year 1901. The contract sought to be proven in evidence here is a contract of

assignment or lease made prior to June 28, 1898, which was declared void by the Curtis bill; and no rights whatever could pass under that contract, or under the assignment of it, except such as were after 1898. Mr. Owens could acquire nothing under that, and, if he could acquire nothing under it, he had no control over those premises for 1902, except such as he might obtain from the owner of the premises, and there is no claim that he obtained any rights from the owner of the premises. There is a claim in here, but it cannot be recognized; that is, that the owner of the premises had accepted rents for the year 1902. Mr. Owens could not succeed to any rights at that time under the void contract, in my judgment, and therefore I instruct you to return a verdict in this case." From the language of the court above set out, it is seen that the peremptory in- struction for the defendant was based on the theory that as the contract of lease under which plaintiff claimed title—the one he had purchased from Bloodworth, and under which both parties held—was void, and therefore as neither of the parties had title, the plaintiff could not recover. The plaintiff and defendant, under our statute (Mansf. Dig. § 647), were tenants in common of the leasehold. Before their joint term expired, plaintiff purchased the title of their landlord; and defendant, by paying rent to plaintiff, acknowledged him as his landlord. And this created the relation of landlord and tenant between them, and the plaintiff must recover in this cause unless the defendant, under the circumstances of the case, may deny his landlord's title. It is the general rule of law that this cannot be done, but there are well defined exceptions to this rule. They are, first, that the entry was induced by the fraud of the landlord; second, that there was a mistake in the execution of the lease; third, that the lease was made for purposes in violation of the law; or, fourth, that the lease was for improvements upon public lands specially reserved. Wood on Landlord & Tenant, § 232. And therefore, to sustain the action of the court in direct-

ing the verdict for the defendant, it must appear that the lease from Bloodworth· to plaintiff, upon which he claims the title under which the relation of landlord and tenant arises between him and the defendant, was void because of the existence of one or more of the above exceptions to this general rule.

The chain of title in this case, as far as it is necessary to state, begins with McGrady and wife, who on January 13, 1898, executed a lease for a term of five years to James Mynnahan. Mynnahan sold and assigned this lease to James M. Bloodworth on October .13, 1898, who on the 13th day of February, 1901, leased the land to the parties to this suit for one year. Before the termination of this last lease, Bloodworth sold and assigned the original lease to the plaintiff, and, as before stated, plaintiff's tenant in common, the defendant, paid him the rent, and thus attorned to him. The plaintiff's title, then, rests exclusively on the validity of the original deed of McGrady to Mynnahan, which had been conveyed to him by Bloodworth. If that title was procured by him "for purposes of violation of law," or "for improvements on public lands specially reserved," it was void; and it was such a want of title as that, under the exceptions to the rule above set out, his lessee, whether made so by written lease, or by the payment of rent, could dispute and deny and under which the plaintiff, as landlord, could claim no allegiance of the defendant. Was that lease void for the reasons stated? The act entitled "An act for the protection of the people of the Indian Territory and for other purposes," the Curtis bill (30 Stat. 304, c. 517, § 23), enacted on June 28, 1898, provides "that all leases of agricultural or grazing land belonging to any tribe made after the first day of January, 1898, by the tribe or any member thereof, shall be absolutely void, and all such grazing leases made prior to said date shall terminate on the first day of April, 1899, and all such agricultural leases shall terminate on January first, 1900." This was agricultural land.

The lease was originally executed on January 13, 1898, and therefore became void immediately upon the date of the passage of the act, June 28, 1898. All of the other leases and assignments were after that date. Both parties to the suit are white men. That the lease was void after the date of the passage of the act of June 28, 1898, is not questioned. And why was it void? Because a statute of the United States declaring the public policy of the government in dealing with these very lands, amongst others, made it so. Thereafter any holding of Indian lands under such a lease was unlawful and against the public policy of the United States government, and any attempted revivification of it by placing others in possession of these lands under it, or holding by its terms and collecting rents from them, is equally unlawful and against public policy. Each of these conveyances of the lease, and the subleases under it, after the passage of this act, was made for the purpose of unlawfully possessing and holding these lands and collecting rents from them, in defiance of the statute, and, if tolerated, would necessarily result in its nullification. These lands were reserved by the statute from such occupation, and this juggling with the void lease was a mere attempt to avoid the terms of the written law. The assignment of the lease of Mynnahan to Bloodworth, having been made after the statute avoided the lease, was made for an unlawful purpose, and conveyed no title in him. The assignment of the lease from Bloodworth to plaintiff, for the same reason, was unlawful and conveyed no title, and possession under it gave to him no right of fealty from a sublessee, so that he may not, in an action of unlawful detainer, deny his title. Wood, Landlord & Ten., supra. In Smythe vs Henry (decided by the United States Circuit Court for the Western District of North Carolina) 41 Fed. 705, the court say: "It is further insisted that, as Junaluska became the tenant of Sherrell, he could not deny his landlord's title. An estoppel between landlord and tenant rests upon considerations of

public policy. It cannot apply when its allowance would contravene a public policy expressed in a positive statute. Junaluska was restricted as to making a direct alienation, and no presumption or rule of the common law would allow him to pass his title by agreeing to become a tenant of Sherrell. Where a statute positively declares that a thing shall not be done, the law will not suffer its policy and purpose to be thwarted by any subterfuge or ingenious contrivance clothed with the semblance of legality." Here the statute positively declares that after June 28, 1898, all leases of this character shall be void; and this declaration of the statute, in its legal and necessary effect, just as positively declares that thereafter no Indian lands shall be held or possessed under them. This was the very purpose of the statute and the policy of the Legislature. 'A grantor of the fee, under such circumstances, is not estopped to deny his own title. Id. 708; Bigelow, Estoppel (5th Ed.) § 351; Hall vs Benner, 21 Am. Dec. 394; McKinnis vs Scottish Amer. Mtg. Co. (Kan.) 39 Pac. 1018. The court, in Smythe vs Henry, supra, held that such a lease is not even color of title. The language of the court is: "It is further insisted that the deed to Sherrell was at least color of title, and gave him a right to the land by reason of his first possession and the continuous possession of his tenant, Junaluska, for seven years. I am of the opinion that a deed made in violation of the provisions of an express statute is void for all purposes, and will not constitute a color of title so long as it contravenes such expression of legislative will. * * * There are numerous decisions in the courts which declare that a void and worthless deed will constitute color of title that will have operation under statutes of limitations, but such deeds were void for other purposes than those which contravene an express prohibition of a statute or some established policy of the law."

We therefore hold that as Congress, in aid of the public policy of the government in relation to Indian lands, and the

speedy allotment of them in the Indian Territory, had passed a statute positively declaring all such leases as that upon which the plaintiff in this case relied void, and as the very purpose of the statute was to put an end forever to all holding of Indian lands under them, the lease under which the plaintiff claims title, being of the prescribed class, is not only void, and conveyed to him no title, but that it did not create, as between him and his sublessee, the defendant, the relation of landlord and tenant, and in this action, he (the defendant) could deny and show the want of title in plaintiff. The truth of the matter is that these transactions, conveying from one to the other, and executing subleases under the void leases, was, as to all of the parties, including both plaintiff and defendant, unlawful and against the public policy of the law, and all were in equal fault; and in such cases, the parties being in pari delicto, the courts will refuse to listen to the prayer of their complaints, and will close their doors against them.

The judgment of the court below is affirmed.

RAYMOND, C. J., and TOWNSEND, J., concur.